### In re Franklyn C. NOFZIGER.

### Div. No. 87–1.

United States Court of Appeals, District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsel Ethics in Government Act of 1978, as Amended).

Feb. 5, 1991.

As Amended Feb. 6 and March 7, 1991.

Robert Plotkin, E. Lawrence Barcella, Jr., and Sandra Wilkinson, Laxalt, Washington, Perito & Dubuc, Washington, D.C., were on the Application for Attorneys' Fees for Petitioner.

Stuart M. Gerson, Asst. Atty. Gen., Patricia M. Bryan, Deputy Asst. Atty. Gen., Michael Jay Singer and Thomas M. Bondy, Attys., Dept. of Justice, filed Comments to Application for Attorneys' Fees.

James C. McKay, Washington, D.C., Independent Counsel, filed a Memorandum on the Application for Attorneys' Fees.

E. Lawrence Barcella, Jr., Robert Plotkin and Sandra Wilkinson, Attys., Washington, Perito & Dubuc, Washington, D.C., were on the Reply to Dept. of Justice Comments on Application for Attorneys' Fees for petitioner.

Before MacKINNON, Presiding, BUTZNER and PELL, Senior Circuit Judges.

PER CURIAM:

Franklyn C. Nofziger, former Assistant to the President for Political Affairs, was the subject of an investigation and prosecution by Independent Counsel James C. McKay in accordance with 28 U.S.C. § 591 et seq. He was indicted and convicted on three counts alleging violations of 18 U.S.C. § 207(c). However, upon appeal the indictment was held to be invalid and the convictions were reversed. Nofziger now petitions the court to rule that he is entitled to be reimbursed for his attorneys' fees notwithstanding that the statute limits the award of fees to cases in which "no indictment is brought against such individual." 28 U.S.C. § 593(f)(1). We hold that the reversal of the convictions obviated the "no indictment" requirement. Nonetheless, the Petition for an award of attorneys' fees is denied because of the absence of any showing that the fees "would not have been incurred but for the requirements of [the Act]."

### I.  Background

On November 7, 1986, the Department of Justice received "credible" information from the United States Attorney in the Southern District of New York investigating Wedtech Corporation, Welbilt Electronic Die Corporation ("Welbilt")[1] and associated matters, that Franklyn C. Nofziger, Assistant to the President for Political Affairs from January 21, 1981 through January 22, 1982, might have engaged in illegal lobbying communications on behalf of Welbilt and Comet Rice, Inc. within the prohibited one-year period shortly after leaving the White House on January 22, 1982 to establish Nofziger and Bragg Communications as a political consulting firm.[2]

Starting with the credible information thus received, the Acting Attorney General subsequently determined that reasonable grounds existed to warrant further investigation into whether Nofziger had on two occasions communicated on behalf of Welbilt and Comet Rice to former colleagues at the White House in violation of 18 U.S.C. § 207(c). The applicable statute then provided:

> (c) Whoever, other than a special Government employee who serves for less than sixty days in a given calendar year, having been so·employed as specified in subsection (d) of this section, within one year after such employment has ceased, *knowingly* acts as agent or attorney for, or otherwise represents, anyone other than the United States in any formal or informal appearance before, *or, with the intent to influence, makes any oral or written communication on behalf of anyone other than the United States, to—*
>
> (1) the department or agency in which he served as an officer or em-

---

1. Welbilt Electronic Die Corporation ("Welbilt") was operated jointly with Wedtech Corporation.

2. Application for Appointment of Independent Counsel 1, 6 (D.C.Cir., Div. No. 87–1, Jan. 6, 1987) [herein *Application*].

ployee, or any officer or employee thereof, and

(2) in connection with any judicial, rulemaking, or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other *particular matter, and*

(3) which is pending before such department or agency or *in which such department or agency has a direct and substantial interest—*

shall be fined not more than $10,000 or imprisoned for not more than two years, or both.[3]

18 U.S.C. § 207(c) (emphasis added).

Following the preliminary investigation required by 28 U.S.C. § 591(a) and (b) and authorized by § 591(c), the Acting Attorney General determined within 60 days[4] of the receipt of such information that there were "reasonable grounds to believe that further investigation [of Nofziger was] warranted." Accordingly on January 6, 1987, in compliance with 28 U.S.C. § 592(c)(1),[5] he applied to the Special Division for the appointment of an independent counsel.

On February 2, 1987, the Special Division appointed James C. McKay as Independent Counsel and defined his jurisdiction, *inter*

alia, "to investigate to the maximum extent authorized by Title 28 U.S.C. § 594, whether ... Franklyn C. Nofziger [violated 18 U.S.C. § 207(c)[6] by his lobbying (communication) activities within], a period of one year following his resignation from federal service...."[7]

Thereafter the investigation proceeded at normal pace[8] and on July 16, 1987 Nofziger was indicted on four counts alleging violations of § 207(c) in making prohibited oral and written communications to the White House and the Department of Defense "with the intent to influence" them in particular matters in which such agencies then had a "direct and substantial interest,"[9] and two counts alleging violations of 18 U.S.C. § 207(a) in making two oral communications on behalf of Welbilt to the Department of Defense and the Small Business Administration with regard to Welbilt matters *in which he had "participated personally and substantially" while Assistant to the President.*[10]

Prior to trial, Independent Counsel McKay voluntarily dismissed the charges in the two subsection (a) counts. According to his Final Report, this was done to avoid jury confusion. Independent Counsel believed that "the sentencing determination probably would not in any way be affected by the absence of any section 207(a) convic-

---

**3.** 18 U.S.C. § 207(c) has been amended subsequently, effective January 1, 1991. Ethics Reform Act of 1989, Pub.L. No. 101–194, Title I, § 101(a), 103 Stat. 1716, 1717.

**4.** 28 U.S.C. § 592(a)(1) authorized a 90 day investigation.

**5.** By virtue of being an officer in the principal 1980 national campaign committee to elect the President, 28 U.S.C. § 591(b)(8), or because of the conflict of interest resulting from his close personal or political relationship with the President, 28 U.S.C. § 591(c), or both, Nofziger was subject within the discretion of the Attorney General to being investigated pursuant to the Independent Counsel Act, 28 U.S.C. § 591 *et seq.* (1988).

**6.** Section 207(d) further provided: "Subsection (c) ... shall apply to a person employed—(A) at a rate of pay specified in or fixed according to subchapter II of chapter 53 of title 5, United States Code, or a comparable or greater rate of pay under either authority." The indictment alleged that Nofziger was "a covered person"

under subsection (d) by virtue of being employed at a rate of pay comparable to or greater than subsection (d) required.

**7.** Order appointing James C. McKay as Independent Counsel at 1–2 (D.C.Cir., Div. No. 87–1, Feb. 2, 1987).

**8.** *Infra* at 446–447.

**9.** The 207(c) charges involved two counts alleging prohibited written communications for Welbilt to the White House, one count alleged a communication for the National Marine Engineers Beneficial Association, AFL–CIO ("MEBA") and one count alleged a communication for Fairchild Republic Corporation to the National Security Council.

**10.** 18 U.S.C. § 207(a) is broader than section 207(c). It does not specifically cover high-government officials and it requires that the former officer or employee must have previously participated personally as an officer or employee in the particular matter.

tions involving the same client and subject matter as two of the other 207(c) counts." Report of Independent Counsel at 18–19, *In re Nofziger* (Div. No. 87–1) ("*Final Report*"). The dismissal of of the subsection (a) counts was authorized by applicable prosecution policy. Department of Justice, *Principles of Federal Prosecution* § 3(g) (1980). The dismissals left Nofziger indicted only for the four 207(c) offenses.

Trial began on January 11, 1988 and on February 11 the jury found Nofziger guilty on three of the four 207(c) counts.[11] (Tr. 4–5). Nofziger immediately appealed.

### A. *The Appeal.*

The scope of the word "knowingly" in section 207(c), *supra* at 430–431, had been an issue at pretrial and at trial. Independent Counsel interpreted section 207(c) as establishing

> two separate, but parallel, offenses: (1) an *"appearance* [representational] offense," which requires the defendant to have *"knowingly"* acted as representative of someone other than the United States in an appearance before his former agency; and (2) a [separate] *"communication* offense," which requires only that the defendant have made a communication *"with the intent to influence"* his former agency

in any particular matter pending before such agency or in which such department or agency has a direct and substantial interest. *Final Report* at 19 (emphasis added). The indictment only charged communication offenses in concurrence with the above interpretation. Prior to trial the court upheld the indicted counts based on such interpretation of the statute. *United States v. Nofziger,* Cr. No. 87–0309 (D.D.C. filed Nov. 10, 1987) (mem. op.).

On appeal, as at the trial level, the Independent Counsel argued in support of the District Court's interpretation that "knowingly" applied only to "appearance of-

fense[s]." No appearance offenses were charged. Nofziger, however, continued to contend that the requirement of acting "knowingly" extended beyond the disjunctive "or," that separated the "appearance" and "communication" offenses, and modified the entire sentence including the "communication offense." According to Nofziger's construction, section 207(c) required the government to prove that his state of mind in committing the communication offenses included two elements of intent, *i.e.,* that he acted with *"knowledge"* of the circumstances that made the communication offenses unlawful (that the White House had a direct and substantial interest in the particular matter), *and* that "with the intent to influence" he made a "written communication to such department or agency."

The Court of Appeals decision adopted Nofziger's proposed construction, one judge dissenting, and reversed his convictions. *United States v. Nofziger,* 878 F.2d 442 (D.C.Cir.1989) (*en banc* denied). In so ruling, the court's decision stated:

> Because of subsection 207(c)'s ambiguity, time-honored rules of statutory construction dictate that we interpret the subsection as requiring the government to demonstrate *knowledge* of the facts that made his conduct criminal. *The district court should have dismissed the indictment filed by the prosecution because it [the indictment] failed to impose this burden on the government.*

*Id.* at 454 (emphasis added).

Nofziger presently argues that the statement italicized above supports his present contention that the reversal of his convictions operates to entitle him to an award of his attorneys' fees and "that the indictment should never have been brought...." *Application for Attorneys' Fees* at 8, *In re Nofziger* (D.C.Cir., Div. No. 87–1, Feb. 15, 1990) [herein *Petition* ]. In addition, argu-

---

11. Nofziger and Bragg were acquitted on Count Two of the retyped indictment as presented to the jury without the dismissed 207(a) counts. (Tr. 4). Count Two alleged Nofziger and Bragg had on August 20, 1982 violated section 207(c) in sending a "written communication on behalf of Welbilt to James E. Jenkins, who was then Deputy Counselor to the President ... [in] the White House ... in connection with ... the proposed Army engine contract...." *See* Tr. 4119–20.

ing that *In re Donovan,* 877 F.2d 982 (D.C. Cir.1989) "is controlling," Nofziger argues that his attorneys' fees were incurred under circumstances that comply with the necessary "but for" requirement of section 593(f)(1).

## II. DISCUSSION

The Special Division is authorized in an independent counsel investigation to award the subject of an investigation those attorneys' fees that would *not* have been incurred "but for the requirements" of the Act in those cases in which *"no indictment is brought."* (Emphasis added). 28 U.S.C. § 593(f)(1) provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if *no indictment is brought* against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred *but for* the requirements of this chapter.... (Emphasis added).

Nofziger *was* indicted on four counts alleging violations of 18 U.S.C. § 207(c) and two counts alleging violations of 18 U.S.C. § 207(a). The two 207(a) counts, as stated above, were voluntarily dismissed prior to trial. A jury subsequently convicted Nofziger on three of the four 207(c) counts charging three separate written communications to the White House on behalf of Welbilt,[12] the Marine Engineers Beneficial Association ("MEBA"), and one oral communication to staff members of the Department of Defense (National Security Council) on behalf of Fairchild Republic Corporation, a major defense contractor. All convictions were reversed on appeal. *See United States v. Nofziger,* 878 F.2d 442 (D.C.Cir.1989).

A. *The "No Indictment" Requirement of the Act.*

Petitioner presently contends as a result of the reversal of his convictions on the three 207(c) counts, and the voluntary dismissal of the 207(a) counts, (1) that he is *entitled* to an award for his attorneys' fees under section 593(f)(1)[13] "the same ... as the subject of an investigation who was not indicted in the first instance, and therefore fairness, equity and the spirit of the statute dictate that Section 593(f) apply equally to him," and (2) that he also satisfies the "but for" requirement of the Act.[14]

■ At first glance, it would appear since Nofziger *was indicted* that his claim of entitlement to attorneys' fees should be denied on the ground that he fails to satisfy the plain language of section 593(f)(1)'s "no indictment" requirement. Such waivers of sovereign immunity, granting the right to petition the Government for attorneys' fees, are to be strictly construed in favor of the sovereign. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *In re Donovan,* 877 F.2d 982, 994 (D.C.Cir.1989); *In re Olson,* 884 F.2d 1415, 1428 (D.C.Cir. 1989), *In re Jordan,* 745 F.2d 1574, 1576 (D.C.Cir.1984).

It is also well established that in order for an indictment to be valid, it must allege the elements of the offense charged. *United States v. Cruikshank,* 92 U.S. 542, 558, 23 L.Ed. 588 (1875); *see also Russell v. United States,* 369 U.S. 749, 763, 768 (1962); *United States v. Debrow,* 346 U.S. 374, 376, 74 S.Ct. 113, 114, 98 L.Ed. 92 (1953) ("An indictment is required to set forth the elements of the offense to be charged."); *Cochran and Sayre v. United States,* 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704 (1895) ("The true test of the sufficiency of an indictment is ... whether it contains the elements of the offense to be charged....").

---

**12.** Nofziger was acquitted on Count Two of the retyped indictment. *See supra* note 11.

**13.** See *supra* at 433 for text of statute.

**14.** Application for Attorneys' Fees at 9–11, *In re Nofziger* (D.C.Cir., Div. No. 87–1, Feb. 15, 1990).

The Court of Appeals decided that *"knowledge* of the facts that made his conduct criminal" was an essential element of the offense and, since the indictment did not allege that he had acted "knowingly," that the indictment of Nofziger was therefore invalid. *Nofziger*, 878 F.2d at 454 (emphasis added).

■ Whether one agrees or not with the court's construction of section 207(c), that decision establishes the law of the case,[15] and the court's determination that the indictment was invalid constitutes a formidable obstacle to denying compliance with the "no indictment" requirement. As for the condition precedent that *"no indictment is brought"* it seems highly implausible, even under a strict construction of that language, that such provision intended an *invalid* indictment to defeat an award the same as a *valid* indictment.

Thus, because the indictment on appeal was held to be invalid, the question becomes whether an invalid indictment bars an award of attorneys' fees under the "no indictment" requirement. We are of opinion that it does not. In this situation the letter of the law killeth. In statutory interpretation it is a given that statutes must be construed reasonably so as to avoid absurdities—manifest intent prevails over the letter. Justice Brewer in his classic decision in *Holy Trinity Church v. United States*, 143 U.S. 457, 459–460, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1893) remarked:

> It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.... If a literal construction of the words be absurd, *the Act must be construed as to avoid the absurdity.* (Emphasis added).

Legislatures are presumed to act reasonably and statutes will be construed to avoid unreasonable and absurd results. As in the English case which provided that a prisoner who breaks prison shall be guilty of a felony, the court ruled that the Act did not extend to a prisoner who breaks out when the prison is on fire, "for he is not to be hanged because he would not stay to be burnt." Cited in *Holy Trinity Church*, 143 U.S. at 461, 12 S.Ct. at 5. Such logic is overwhelming. There are legions of court decisions to the same effect. *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962) (statutory construction is not confined to the "bare words of a statute"); *Utah Junk Co. v. Porter*, 328 U.S. 39, 44, 66 S.Ct. 889, 892, 90 L.Ed. 1071 (1946) ("literalness may strangle meaning"); *Markham v. Cabell*, 326 U.S. 404, 409, 66 S.Ct. 193, 195, 90 L.Ed. 165 (1945) ("The policy as well as the letter of the law is a guide to decision."); *United States v. Kirby*, 7 Wall, 482, 486, 19 L.Ed. 278 (1868) (the statute punishing obstruction of the mails is not to be applied to obstruction for the lawful purpose of arresting one indicted for murder); and *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir.1944) ("There is no surer way to misread any document than to read it literally." (L. Hand)).

Applying the above principles we conclude that the "no indictment" provision was intended to accomplish a reasonable result and it would be absurd to construe the statute as intending to treat an *invalid* indictment the same as a *valid* indictment. To escape such absurd result we construe this particular prohibition of the Act as being limited to instances in which "no [*valid*] indictment is brought." The invalid indictment of Nofziger, therefore, is not

---

**15.** "Under the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[1] at 117 (2d ed. 1988). *See National Wildlife Fed'n v. Burford*, 878 F.2d 422, 432 (D.C.Cir.1989); *Sims v. C.I.A.*, 709 F.2d 95, 97 (D.C.Cir.1983) (when an initial appeal defined "intelligence source" that definition became the law of the case for purpose of proceed-

ings on remand); *City of Cleveland v. Federal Power Comm'n*, 561 F.2d 344, 346 (D.C.Cir. 1977). This doctrine "express[es] the duty of a lower [or another] court to follow what has been decided by a higher court at an earlier stage of the case, [and] applies to everything decided, either expressly or by necessary implication...." *City of Cleveland*, 561 F.2d at 348 (citation omitted). 12 Minnesota Law Review 403.

a bar to reimbursement for his attorneys' fees.

### 1. The dismissal of the section 207(a) counts.

■ While the decision by the Court of Appeals related only to the subsection (c) counts, the same omission to allege conduct that was "knowingly" committed was present in the two subsection (a) counts that McKay voluntarily dismissed before trial.[16] In structure, section 207(a) is nearly identical to 207(c) and, under the law of the case,[17] we hold that the subsection (a) counts required an allegation that Nofziger acted "knowingly." Thus, these counts are also invalid and do not operate to bar an award of attorneys' fees.

### B. *Nofziger's Interpretation of the Court's Decision.*

Nofziger characterizes the Court of Appeals' decision as a finding that "the indictment should never have been brought...." *Petition* at 8. We address this comment only to reject explicitly such characterization. The Court of Appeals made no such decision. Its opinion cannot be so interpreted. The issue upon which the court reversed Nofziger's convictions dealt *only* with the *construction* of subsection (c). The court held only that "[t]he district court should have dismissed the indictment ... because it failed to impose this burden [of proving the requisite *knowledge* of the facts that made his conduct criminal] on the government." *See supra* at 431–433, 878 F.2d at 454.

There is no basis in the court's opinion to take the decision one giant leap further and, on the facts of this case, misconstrue it as deciding that Nofziger *could not* have been properly indicted. In our opinion, de-

cisional and statutory law permitted, and the transcript reflects, that Independent Counsel could have convened a new grand jury and, notwithstanding the statute of limitations, as authorized by 18 U.S.C. § 3288 (1988),[18] reindicted Nofziger on the three counts amended to conform to the court's interpretation of section 207(c). *See infra* at 436.

■ A defendant whose conviction is reversed on appeal for an insufficient indictment may be retried upon another indictment charging the same offense as that which was reversed. *United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896) (defendant who procures a reversal of his conviction for murder because of a fatally defective indictment may be retried upon another indictment for the same offense); *Montana v. Hall,* 481 U.S. 400, 404, 107 S.Ct. 1825, 1827, 95 L.Ed.2d 354 (1987) (a defendant may be recharged and tried for sexual assault after reversal of a conviction because of a defect in the charging instrument); *Lee v. United States,* 432 U.S. 23, 34, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977) (defendant may be recharged and tried for theft following dismissal of an information for failure to allege the requisite knowledge and intent).

■ A valid reindictment here would have reinstated the "no indictment" prohibition. However, the decision by the Independent Counsel not to continue the prosecution of Nofziger reflected his further decision that

the investigation and prosecution ... have served an important public purpose in that former public officials undoubtedly will be deterred, as a result thereof, from engaging in lobbying activities

---

**16.** *See supra* text at 432.

**17.** *See supra* note 15.

**18.** 18 U.S.C. § 3288 provides:
   Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date

of the dismissal of the indictment or information, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations....

without ascertaining in advance whether or not their contemplated action might violate ethical statutes.

*Final Report* at 23. He thus decided that the ends of justice had been served by publicly indicting and trying Nofziger, and in view of the time, expense and publicity to which Nofziger had been subjected, elected not to reindict and retry him. The Act authorizes independent counsel to "dismiss matters within [his] prosecutorial jurisdiction." 28 U.S.C. § 594(g). His decision not to seek reindictment, however, was not based on any determination that the basis of the court's reversal, or the facts, precluded a reindictment.

*Factual basis for reindictment:* The jury's verdict determined beyond a reasonable doubt that Nofziger had in each of the counts "with the intent to influence, made a written communication ... in connection with the particular matter ... in which the [Agency] then had a direct and substantial interest." Counts I, III, IV. Nofziger's experience and intelligence, his knowledge of the White House operations and policies (and other agencies he was lobbying), Tr. 3596, his knowledge of the particular matters he was lobbying, his knowledge of the direct and substantial interest of those governmental agencies that is indicated by the actual lobbying activities he directed at key personnel in such agencies, and by their prior and subsequent consideration of his requests, support, with other facts of record, *infra,* the requisite *knowledgeable* conduct on his part sufficient for indictment. A major defense supplier, like Fairchild, does not press its continuing almost billion-dollar interests before the National Security Council with agents who do not have *knowledge of the direct and substantial interests of the agencies, and of the particular matters, they are lobbying.* *See* Tr. 3596. The same can be said for the lesser, but substantial, interests of MEBA and Welbilt. In addition, Nofziger's written and oral communications in three separate matters, addressed precisely to those high-government officials with authority in the governmental agencies to influence the decisions he sought, all furnish support for a finding that he had "knowledge" of the requisite "direct and substantial interest" of the agencies in the particular matters he was lobbying that made his conduct unlawful. *Id.* The transcript and available testimony also indicate that Nofziger had personal "knowledge" that his conduct was unlawful. *See* Tr. 3555–56.

Thus, the decision not to allege that Nofziger acted "knowingly" was not due to the absence of evidence of that fact. It was due to a determination by Independent Counsel, supported by senior career prosecutors in the Department of Justice, *infra* at 449, and by the decision of the trial court, *supra* at 432, that the alleged "intent to influence" satisfied the necessary *mens rea* requirement of the statute for a separate "communication" offense, and that a further allegation that Nofziger acted "knowingly" was not required. That omission could easily be corrected in a reindictment.

### C. *Equitable Interpretation.*

The Petitioner also argues that "[t]o deny Mr. Nofziger the opportunity to recover fees is inequitable and inconsistent with the terms and spirit of the statute." *Petition* at 4. In the same vein he seeks to have the court view his Petition for fees favorably and with an eye toward the "unique dictates" of the Independent Counsel Act. *Petition* at 5. In particular, Nofziger points to the requirements of the Act under which government officials and former government officials, such as himself, "must undergo investigative and prosecutorial scrutiny that other citizens simply do not suffer," because they are prosecuted "outside [the] normal prosecutive efforts" of the Department of Justice. *Id.* The result, Nofziger contends, is a "task force," *id.* at 7, "not limited by budgetary or manpower considerations," that *"will not leave any stone unturned* in carrying out [its] mandate." *Id.* at 5 (emphasis added). These arguments are, in effect, an appeal to the court to apply a preferential construction of the Act for alleged equitable reasons because Nofziger was a high-government official and subject to the Act.

For the court to submit to such entreaties would result in the award of attorneys' fees in every independent counsel case because under the Act all independent counsel investigations of high-government officials constitute a task force of the necessary potential, size and diligence and with the same investigative resources. Congress, however, never intended that attorneys' fees should be awarded in *every* independent counsel case. The Committee Report states: "[T]he Committee believes that reimbursement of attorneys' fees would be warranted, if at all, in only *rare* instances." S.Rep. No. 97–496, 97th Cong., 2d Sess. 19 (1982) U.S.Code Cong. & Admin.News 1982, p. 3555 (emphasis added) [herein 1982 Senate Report]. The Act does not waive sovereign immunity as broadly as petitioner argues, nor does our obligation to strictly construe waivers of sovereign immunity allow such equitable arguments to prevail over the terms of the statute. In regular prosecutions, United States Attorneys are not allowed to leave "unturned stones"; they must "prosecute for *all* offenses against the United States...." 28 U.S.C. § 547(1) (emphasis added). The complete answer to Nofziger's contentions in this respect is that he has shown no grounds for complaint. He accepted a high-government position and a thorough scrutiny of his conduct goes with the office if he trespasses into apparent criminal conduct that is determined under the strictures of the Act to warrant investigation.

1. The Extent of the Investigation.

Nofziger's complaint of the thoroughness of the investigation also indicates a lack of familiarity with the extent to which federal crimes are traditionally investigated. Investigations by independent counsel should go to considerable lengths and "leave no stone unturned" to inculpate or exculpate a subject and should not be criticized because of the thoroughness in those few investigations that uncover indictable offenses. Actual experience in the operation of the Act has proven that most high-government officials are exonerated as a result of such investigations. Nine of twelve independent counsel appointments have ended with no indictment being brought.

Congress, as a protection to the integrity of the federal government *and its high-ranking officials,* has decreed in 28 U.S.C. § 591 *et seq.,* that an independent counsel, rather than the Department of Justice, shall investigate to determine whether high-government officials are innocent or should be indicted when they are credibly accused of committing a federal crime. Thorough compliance with that requirement by independent counsel does not operate to satisfy the statutory requirements for an award of attorneys' fees. For further discussion see *infra* at 442–446.

To ensure impartiality, such investigations should be conducted by counsel who are not burdened and possibly controlled by an institutional conflict of interest. The statutory "mandate" of independent counsel (and of regular prosecutors) is to investigate to the extent necessary to ensure that all subjects of investigation, high-level government officials and others who may be involved, are properly charged if they committed an offense and are exonerated completely in the event it is determined that they committed no indictable offense. The impartiality of independent counsel and the thoroughness of his investigation ensures that the public will have confidence that the investigation as a whole is unbiased and entitled to respect. To this end, independent counsel decisions to prosecute, as well as decisions not to indict, or to dismiss charges, will evoke equal public acceptance. The legislative history supports this objective of the Act:

The independent counsel mechanism was designed to reach certain goals: to ensure that a fair, impartial, and thorough investigation is conducted into all criminal allegations against senior government officials; to ensure continuing public confidence in our democratic system and to protect the Executive Branch from unwarranted suspicion; to insulate the investigation of senior officials from personal or political influence and therefore to ensure that its conclusion will have the fullest credibility; and to afford

protection to the reputation of any person subject to investigation, precisely because the independent counsel's investigation is independent and credible.

H.R.Rep. No. 100–316, 100th Cong., 1st Sess. 11 (1987).

One high-level government official *requested* an independent counsel investigation[19] in an attempt to clear his name through the extensive investigation and the impartial procedures of the Independent Counsel Act. *See, e.g., In re Meese*, 907 F.2d 1192, 1194 (D.C.Cir.1990). Such request demonstrates that *innocent* high-government officials have confidence that the procedures of the Act will produce a fair and correct result—even against incessant media accusations.

### D. The "But For" Requirement of the Act.

In addition to the "no indictment" provision, the Act imposes the following additional requirement before an award for reimbursement of attorneys' fees may be ordered:

> [T]he division of the court may … award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred *but for* the requirements of this chapter.

28 U.S.C. § 593(f)(1) (emphasis added). This is the "but for" requirement. One formulation of this requirement restricts the court in awarding attorneys' fees to those cases in which "the fees would not have been incurred by a private citizen in [a regular] *investigation* of the same allegations." 1982 Senate Report at 18 (emphasis added), U.S.Code Cong. & Admin.News 1982, p. 3554. Additional legislative history further clarifies the "but for" requirement.[20] Since the statute constitutes a waiver of sovereign immunity it is to be strictly construed. *See supra* at 433. Awards of substantial attorneys' fees by

the Special Division have been limited to few cases.

#### 1. Prior Cases Awarding Attorneys' Fees.

Our prior decisions can be summarized as awarding attorneys' fees in three circumstances in which no indictment was brought. First, the court has awarded fees in cases in which the subject is prejudiced by the Department of Justice's failure to comply with the substantial protective features of the Act. *See, e.g., In re Meese*, 907 F.2d 1192 (D.C.Cir.1990) (substantial, broad independent counsel investigation conducted on referral by Acting Attorney General to Independent Counsel investigating another subject without any apparent prior determination that reasonable grounds existed to warrant further investigation). Reasonable attorneys' fees for the first Meese investigation were paid pursuant to Per Curiam Order citing duplication of investigation by government agencies and the Congress as complying with the "but for" requirement.

Second, fees have been awarded because independent counsel's investigation constituted a substantial duplication of prior investigations. *See, e.g., In re Olson*, 884 F.2d 1415 (D.C.Cir.1989) (independent counsel's investigation massively duplicated House Judiciary Committee and Department of Justice investigations), and *see Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988); *In re Olson/Perry*, 892 F.2d 1073 (D.C.Cir.1990) (independent counsel investigation substantially duplicated prior investigation by the Department of Justice which had resulted in a decision not to prosecute).

Third, the court has awarded fees in two cases in which if the requirements of the Act, restricting the Attorney General's preliminary investigation, did not exist, 28 U.S.C. § 592(a)(2), the case could have been disposed of at an early stage of the investigation, without seeking appointment of independent counsel. *See, e.g., In re Dono-*

---

**19.** An award of attorneys' fees will not be denied because the subject requested the appointment of an independent counsel, *In re Meese*, 907 F.2d at 1201.

**20.** *See infra* at 442–447.

*van,* 877 F.2d 982 (D.C.Cir.1989) (Attorney General's inability to subpoena the key witness to determine his credibility, upon which the entire allegation rested, resulted in appointment of independent counsel and subsequent fruitless investigation);[21] *In re Sealed Case,* 890 F.2d 451 (D.C.Cir.1989) (statutory restriction on Attorney General's preliminary investigation prevented him from obtaining certain documents from another agency that might have resulted in the early termination of the investigation without appointment of independent counsel). In another case, fees were paid pursuant to Per Curiam Order for investigation of an offense allegedly committed in non-covered employment that preceded covered employment and which would not have been investigated "but for" the subsequent covered employment and the requirements of the Act.

### 2. Nofziger's Case Distinguished.

The few cases in which the court found the "but for" requirement satisfied and awarded fees have all been based on substantial factors not present here. This brings us to some of the factual differences that distinguish *Nofziger* from our prior decisions awarding fees. In contrast to those cases, Nofziger's investigation had no unique special factual features that but for the requirement of the Act would have permitted a quick termination if the investigation were conducted outside the Act.

First, the Acting Attorney General's Application for appointment of independent counsel in *Nofziger* did *not* complain that the limitations on his ability to investigate had "hampered" or restricted his preliminary investigation. This is a major distinguishing factor. There is nothing in the record or in the circumstances of Nofziger's alleged offenses that indicates the Acting Attorney General, freed of the statutory restrictions, would have subjected Nofziger to a lesser investigation, or perhaps exonerated him at the "preliminary investigation" stage. Quite to the contrary, the first evidence the Acting Attorney General received of the allegations

against Nofziger came in the form of apparently "credible" information from federal prosecutors in New York that *alone* might have satisfied the requirement that *further investigation was warranted. Application* at 1, 6. The Acting Attorney General also requested the investigation of Nofziger partially on the *discretionary grounds* of subsection (c) of 28 U.S.C. § 591 in addition to the investigation *required* by section 591(a). *Application* at note 2. This is hardly the act of one on the verge of dispensing with a criminal investigation. The investigation of Nofziger also turned up two additional offenses that resulted in convictions. Furthermore, the Department of Justice voluntarily cooperated with the Independent Counsel in drafting the indictment *after* the grand jury investigation. *Final Report* at 7–8, *infra* at 449. These circumstances indicate that the Department of Justice was strongly committed to the investigation.

Second, the Acting Attorney General applied for appointment of independent counsel after scrupulously following the Act's protective procedures. Nofziger's case is an instance in which the protective features are shown not to have been complied with. Unlike in *Meese,* the record reflects the Department of Justice determined that reasonable grounds existed to warrant further investigation of Nofziger following a preliminary investigation before applying for an independent counsel appointment.

Third, there is no showing that Independent Counsel McKay's investigation substantially duplicated any prior investigation of Nofziger by the Department of Justice or other authority. In sum, the facts of record distinguish Nofziger's case from all cases in which the special division has awarded attorneys' fees.

### 3. The Donovan Case Distinguished and Other Contentions.

Nofziger's Petition asserts that the inquiry into his compliance with the "but for" requirement "is *controlled* by *In re Donovan,*" 877 F.2d 982 (D.C.Cir.1989).

**21.** *See infra* at 439–441 for further discussion of *Donovan.*

*Petition* at 9.[22] (Emphasis added). This reliance on *Donovan* is very substantial. It is completely misplaced. The features of *Donovan* that he claims control are set forth in his Petition as follows:

> The Court [in *Donovan*] reasoned that, by virtue of Section 592 of the Independent Counsel Act, the Attorney General is without authority to convene grand juries, plea bargain, grant immunity or issue subpoenas in cases involving persons covered by the Act. Thus, to determine whether further investigation was warranted, the Attorney General was mandated to seek appointment of an independent counsel. Had the Attorney General been permitted to continue his own investigation of Donovan, as he would any ordinary citizen, he would not have been so restricted and could have determined at an earlier stage that the principal witness in the case lacked credibility. *Id.* at 989.

> The Court concluded that Donovan was subjected to a "very extensive and expensive Independent Counsel investigation of a criminal offense where an ordinary citizen might only have been subjected to a non-public summary investigation by the Department of Justice, with no publicity." *Id.* Donovan, the Court held, was "subjected to a more rigorous *application of the criminal law* than [would be] applied to other citizens." *Id.* at 990. As the provisions of the Act prevented the Attorney General from following normal Department of Justice procedures during the preliminary investigation, and because it likely would have quickly terminated the investigation had it not been restricted, any resultant attorneys' fees would not have been incurred "but for" the investigation.

*Petition* at 9–11 (emphasis added).

These factors in *In re Donovan,* however, are not comparable to the facts in Nofziger's case. The Independent Counsel investigation in *In re Donovan,* 877 F.2d 982, 990 (D.C.Cir.1989),[23] was based primarily upon a single allegation of wrongdoing by a single witness of extremely questionable credibility. As determined by the Independent Counsel's investigation, the

> chief witness [was a] convicted felon awaiting sentencing [whose] recollection of events which occurred more than ten years ago [was] often clouded and imperfect ... [and who] gave inconsistent and conflicting accounts of the events....

Report of Independent Counsel at 72–73, *In re Donovan* (D.C.Cir., Div. No. 85–1, Oct. 22, 1987). The criminal history of the witness was known in advance but the details of his testimony were not.

In addition, the Deputy Attorney General, in his application to the court for the appointment of an independent counsel in the second *Donovan* case, stated that he had been *"hampered"* by the Act's restrictions in his preliminary investigation, *i.e.,* by the Act's restrictions on preliminary investigations that prevented the Deputy Attorney General from convening grand juries, plea bargaining, or issuing subpoenas, 28 U.S.C. § 592(a)(2). He represented that these restrictions prevented him from *easily* evaluating the *credibility* of the witness and disposing of the *single accusation against* Donovan by the "chief witness" at a very early stage of the preliminary investigation. 877 F.2d at 988. We agreed. Given the controlling importance of the "credibility" issue in *Donovan,* the special significance of the "hampered" statement in the application by the Deputy Attorney General for the appointment of independent counsel, and "because the decision to prosecute turned largely, *if not completely,* upon determining the credibility" of the "chief witness," the Deputy Attorney General might easily have terminated the case at the beginning by merely subpoenaing the "chief witness." *Id.* at 990 (emphasis

---

**22.** The Petition also makes a number of unsupported bare bone assertions that in the interest of completeness are discussed *infra* at 441–448.

**23.** This was the second independent counsel investigation of Donovan and is not to be con- fused with the very extensive first investigation following which no indictment was brought either. Donovan was not entitled to attorneys' fees in the first investigation because section 593(f) was not enacted until after the termination of that investigation.

added). We did not hold, as Nofziger's argument implies, that the Act's requirements limiting the Deputy Attorney General's preliminary investigatory authority *per se* satisfied the "but for" requirement. If the law on that point were as Nofziger contends, attorneys' fees would be awarded in every independent counsel investigation in which no indictment is brought because the same statutory restrictions on the investigative authority of the Attorney General apply in every investigation of covered officials and employees mandated by 28 U.S.C. § 591 *et seq.*

Nofziger also fails to recognize the *limitations* upon relying on the investigative restrictions of the Act that were subsequently pointed out in our opinion *In re Sealed Case,* 890 F.2d 451, 453 (D.C.Cir. 1989). In *Sealed Case* the Attorney General requested the appointment of an independent counsel to investigate an alleged minor tax violation by a government official. *Id.* at 452. In his application, as in *Donovan,* the Attorney General *represented* that "the Department's inability to use compulsory process during a preliminary investigation" was *one* of his reasons for requesting an independent counsel appointment. And there were more. Much of the necessary evidence was not available because it was protected on privacy grounds in the records of a separate government agency and "but for" the limitations of the Act could have been easily obtained and the investigation more quickly terminated. The restriction thus resulted in a more extensive investigation than ordinary. *Id.* at 454. In commenting on the Attorney General's representation as to the effect of the restrictions we pointed out:

> [T]hese restrictions on the Attorney General's investigative authority during his preliminary investigation are particularly limiting. *Not that the mere existence of these statutory restrictions satisfies the "but for" requirement in every case.* But where, as here, the Attorney General in his application represents that the statutory restrictions *have interfered* with his ability to conduct an adequate preliminary investigation, *and the circumstances of the alleged offense indi-*

*cate that, if the Attorney General were not so limited, applicant might have been subjected to a lesser investigation, or perhaps exonerated at this early stage,* the statutory limitations are factors that the court may rely upon in determining that the "but for" factor is satisfied.

*In re Sealed Case,* 890 F.2d at 453 (emphasis added). We thus relied upon the unusual effect of the statutory restrictions that resulted from the unique "circumstances of the alleged offense," not on any *per se* construction.

### 4. Additional "But For" Assertions.

In addition to other contentions, Nofziger's Petition makes several bald assertions in an attempt to satisfy the "but for" requirement. He asserts (a) that he was unduly penalized for the position he held in the election campaign prior to service in government; (b) that Independent Counsel was allegedly able to utilize resources that far exceeded those normally available to the Department of Justice for a single subject investigation; and (c) that he was subjected to a very intensive investigation, far more rigorous and extensive than an average citizen. *Petition* at 11.

(a) As for the complaint that he was penalized for his position in the election campaign, the record does not support this allegation. A high-government official being subjected to investigation and prosecution under the Independent Counsel Act is not being subjected to a *penalty.* Moreover, Nofziger's position in the election campaign was not an element of, or related to, the offenses for which he was indicted. Rather, the Acting Attorney General requested the investigation because he determined on evidence he found to be credible that further investigation was warranted of two offenses that were wholly unrelated to any election campaign activity. *Application* at 1–2.

(b) The complaints of the *cost to the Government* of the investigation and trial. Under the Ethics in Government Act, Congress has decreed that when accusations of criminal conduct are determined to be

based upon reasonable grounds to believe that further investigation is warranted, 28 U.S.C. § 592(c)(1)(A), *all* designated high-government officials, and some involved associates so charged (such as Bragg and North), shall be investigated and, if a criminal violation is found, prosecuted under the Independent Counsel Act. 28 U.S.C. § 591 *et seq.* One natural result of the statute requiring an independent counsel investigation and prosecution is that the cost to the Government becomes higher than for regular prosecutions. As compared to the cost of regular investigations and prosecutions conducted by the Department of Justice, an independent counsel investigation may be more costly to the Government because of its "start-up costs." At the outset he must rent private office space, acquire extensive equipment and capital assets, contract for and use private facilities and outside lawyers, and when finished make a complete final report. And during the progress of the case he must maintain a staff to deal with one investigation. *See also* Financial Report of Independent Counsel McKay, *In re Nofziger* (Div. No. 87–1, August 1, 1989); and similar Reports *In re Deaver* (Div. No. 86–2, Nov. 15, 1990); *In re Pierce* (Div. No. 89–5, Nov. 15, 1990); and *In re North* (Div. No. 86–6, May 16, 1990).

The additional cost results primarily from independent counsel complying with the Act that Congress enacted. That substantial governmental resources are available for such investigations does not operate to satisfy the "but for" requirement. *See infra* at 444–446.

(c) The burden of independent counsel investigations. When the first reimbursement authorization was approved in 1983, the legislative history indicated an intent to authorize the reimbursement of attorneys' fees in situations in which the individual being investigated was subjected "to a *more rigorous application of the criminal law* than is [would be] applied to other citizens" for such alleged offenses. 1982 Senate Report at 19, U.S.Code Cong. & Admin.News 1982, p. 3555 (emphasis added). The determination of what constitutes a "more rigorous application of *the criminal law*" (emphasis added) requires an in-

terpretation of the intent manifested in the provision of the Act authorizing an award of "fees incurred ... during that investigation *which would not have been incurred but for the requirements of the [Act].*" 28 U.S.C. § 593(f)(1) (emphasis added). The meaning of that statutory standard, in addition to the meaning derived from the plain words used, is reflected in the legislative history.

The "more rigorous" statement raises two questions: First, what comparison does it intend the court to make by the reference to the "more rigorous application of the criminal law *than is applied to other citizens,*" i.e., is the term "other citizens" limited to private citizens or does it also include high-government officials not subject to investigation under the Act? Second, what was meant by "a more rigorous *application* of the criminal law" (emphasis added)?

*Background of the 1983 amendments to the Act.* In 1983 Congress made three major changes in the Act; (1) it provided a stricter standard for triggering a preliminary investigation; (2) it raised the standard for requesting the appointment of an independent counsel; and (3) it provided for the reimbursement of reasonable attorneys' fees to subjects of independent counsel investigations who were not indicted and satisfied the "but for" requirement. The reason for these changes, in short, was to correct an unequal *application* of "the criminal law," when high public officials were investigated under the Act in circumstances where private citizens would not be investigated. Specifically, Congress noted the investigations of Hamilton Jordan and Timothy Kraft; both were investigated by the Special Prosecutor following allegations that they possessed and used a minimal amount of cocaine. The investigation of these two subjects was very extensive. Furthermore they were investigated when private citizens would not have been investigated because, as a matter of policy, the Department of Justice, operating in the federal field, rarely prosecuted private citizens on such allegations. 1982 Senate Report at 14–15, U.S.Code Cong. & Admin.

News 1982, pp. 3550–3551. In 1982 Congress moved to eliminate the disparity in this application of the criminal law between public officials and private citizens, *i.e.,* to cease investigating high officials under a *different* standard of the criminal law.

*What comparison does the Act intend the court to make in determining whether a high-government official has been subject to "a more rigorous application of the criminal law?"* Section 593(f), the attorneys' fees provision, has been described as providing for the reimbursement of those attorneys' fees to subjects of independent counsel investigations that "would not have been incurred by a private citizen in an investigation of the same allegations." 1982 Senate Report at 18, U.S.Code Cong. & Admin.News 1982, p. 3554. Nofziger's case, however, raises the question whether the correct comparison in this case is between Nofziger, a former high-government official, and a private citizen investigated for the same allegations or whether the comparison should be between Nofziger, a former high-government official investigated under the Independent Counsel Act, and a high-government official investigated for the same alleged offenses outside of the Act.

To determine whether the subject of an independent counsel investigation has been subjected to a more rigorous *application of the criminal law,* the court must compare the investigation of the subject of the independent counsel investigation with an investigation into possible violations of the same statute conducted *in the absence of the Independent Counsel Act.* This comparison is the only one that makes sense in the context of Nofziger's case. As applied to Nofziger, section 207(c) modified by subsection (d)(1)(A), covers only former high-government officials and not private citizens who have never served in government. Therefore, the comparison must be between the investigation of Nofziger, a former high-government official subject to the Act, for alleged violations of section 207(c) and the regular investigation of a similar, high-government official subject to section 207(c) who is not covered by the Independent Counsel Act.

While the legislative history in several references describes the appropriate comparison as one between public officials and private citizens, it has done so when discussing an independent counsel investigation of offenses prohibited by a statute applicable to both public and private individuals in which the actual comparison would be between a public official and a private citizen, as in *Jordan.* Granted, Congress could have compared the Special Prosecutor investigation of Jordan with an investigation of a government official for cocaine possession not conducted by independent counsel. Such comparison, however, would not have served the purpose of the 1983 amendments: to "establish[ ] a standard administration of justice for officials and non-officials," thereby avoiding the "unfairness ... [of] imposing a stricter application of criminal law on public officials." 1982 Senate Report at 15, U.S.Code Cong. & Admin.News 1982, p. 3551.

Congress has not always described the comparison as one between private citizens and public officials. In the 1982 Senate Report and subsequent committee reports, Congress stated the comparison as an investigation of similar allegations in the absence of the Independent Counsel Act. In discussing Jordan's investigation, the 1982 Senate Report stated:

> Present and past officials of the Department of Justice have testified that the Department would rarely prosecute cases of possession in the quantity alleged *under ordinary circumstances, i.e., in the absence of the special prosecutor law.*

1982 Senate Report at 14–15, U.S.Code Cong. & Admin.News 1982, pp. 3550–3551.

> The Division may grant any subject of an independent counsel investigation the reimbursement of attorneys' fees incurred during the independent counsel investigation if no indictment is brought and *if the fees would not have been incurred in the [independent counsel] statute had not applied.*

H.R.Rep. No. 316, 100th Cong., 1st Sess. 36 (1987). This is not that case.

The legislative history thus demonstrates that Congress was concerned with instances in which *the Act* subjected covered officials to investigation for criminal offenses for which ordinary citizens would not have been investigated or prosecuted. That is the different "more rigorous *application of criminal law*" with which Congress was concerned. Therefore, *the appropriate inquiry in Nofziger's case is to determine whether "the fees would not have been incurred if the [the Independent Counsel Act] had not applied,"* id., meaning, would Nofziger, absent the statute, have been similarly investigated and prosecuted by the Department of Justice following the receipt of evidence that he violated section 207(c). We conclude that he would.

*What is meant by the statement that the statute is designed to "ensure that covered officials will not be subjected to a more rigorous application of the criminal law?"* When the Report voiced this articulation of the standard, it was referring to the situation prior to 1983 in which a *different standard* of investigating and prosecuting criminal offenses was applied to government officials investigated under the Act than was applied to individuals not covered by the Act during that same period. Congress has described this inequality in various ways: "a more rigorous application of criminal law," 1982 Senate Report at 19, U.S.Code Cong. & Admin. News 1982, p. 3555; "a harsher standard," H.R.Conf.Report No. 452, 100th Cong., 1st Sess. 31 (1987), U.S.Code Cong. & Admin. News 1987, p. 2197; "a stricter application of criminal law," 1982 Senate Report at 15, U.S.Code Cong. & Admin.News 1982, p. 3551. In every instance, Congress was referring to the *different standards* of investigating and prosecuting alleged violations of criminal law that was applied to government officials and not to private citizens under the Special Prosecutor Act *before 1983.* The examples that are discussed repeatedly are those of Hamilton Jordan and Timothy Kraft. The 1982 Report states:

> Both the Hamilton Jordan and Timothy Kraft cases illustrate how the standard [for appointing a special prosecutor under the pre-1983 Independent Counsel Act] can result in the appointment of a special prosecutor to investigate allegations of criminal activity *which is not or is rarely prosecuted by the Department of Justice.*

\*     \*     \*     \*     \*     \*

> Requiring appointments of a special prosecutor to investigate alleged violations in instances where a *clear Departmental policy* not to prosecute exists is inconsistent with the Act's goal of establishing a standard administration of justice for officials and non-officials. Instead, it creates unfairness by imposing a *stricter application of criminal law on public officials.*

1982 Senate Report at 14–15, U.S.Code Cong. & Admin.News 1982, pp. 3550–3551 (emphasis added).

In light of the complete legislative history quoted above, it is clear that the statement in the 1982 Senate Report—"a more rigorous [or stricter] application of criminal law"—refers to the *application of different standards of criminal law in the investigation of persons covered by the Act and those not covered.* The full paragraph from the Report containing that statement follows:

> The changes S.2059 makes in *the standards which trigger a preliminary investigation and an appointment of a special prosecutor* are designed to ensure that covered officials will not be subjected to *a more rigorous application of the criminal law* than is applied to other citizens. Thus, the Committee believes that reimbursement of attorneys' fees would be warranted, if at all, *in only rare instances.* This amendment is included, however, as a safeguard to compensate officials in the event that they do incur extraordinary expenses during a special prosecutor investigation which eventually absolves them of any wrongdoing. Reimbursement may be warranted, for example, in instances where the special prosecutor *duplicates actions* which have been taken by the Attorney General during the

preliminary investigation. The Committee stresses, however, that the court should award *attorneys' fees sparingly, and that reimbursement should not become a routine event.*

1982 Senate Report at 19, U.S.Code Cong. & Admin.News 1982, p. 3555 (emphasis added).

*The Inherent Differences in Independent Counsel Investigations.* In addition to cases involving the unequal application of the criminal law, the legislative history demonstrates the contention that the *inherently* different nature of the independent counsel process may allegedly result in added legal expenses to the subject of an investigation was also brought to the attention of Congress. With respect to the costs to the defendant, the 1982 Report quotes from Lloyd Cutler's testimony:

[O]ne inevitable consequence of the appointment of a special prosecutor or independent counsel is a repetition of going over ground that has already been gone over, *and a very substantial increase in the amount of time the target and his lawyer must spend on the matter.* So no matter what the outcome, *it's clear to me . . . that the appointment of an independent counsel increases the cost to the individual* and that since that was done primarily for the benefit of the public, the public ought to bear that additional cost at least in the circumstance where no indictment is brought in the end.

1982 Senate Report at 18–19, U.S.Code Cong. & Admin.News 1982, pp. 3554–3555.

Mr. Cutler was contending that the appointment of an independent counsel *necessarily* increases the costs to the subject of the investigation as opposed to the cost he would incur in an investigation of similar charges conducted outside the Act.[24] Thus, Congress was aware of such contention. Nevertheless, Congress refused to authorize reimbursement for such alleged "inherent" costs of subjects. If Congress had so intended it would have allowed for

the reimbursement of *some* attorneys' fees in *every* independent counsel investigation in which no indictment was brought. It did not do so. Instead, the Act provided for reimbursement only of those attorneys' fees that "would not have been incurred but for *the requirements* of [the Act]." It is significant that Congress decided to say "the requirements" of the Act and not simply "the Act." There would be a stronger case for reimbursing the subject of an investigation for any "inherent" costs involved if Congress had said "the Act." Instead, Congress said "but for *the requirements* of the [Act]."

What "requirements" of the Act is Congress referring to? First, it is not the Act in its entirety, because if Congress had so intended it would have omitted the term "requirements" and simply said "the Act." "Requirements" refers to the special limitations and procedures established by the Act, for example, the two-step investigatory procedure[25] by the Attorney General which includes the threshold determination "whether grounds to investigate exist" and the determination whether there are "reasonable grounds to believe that further investigation is warranted" and the investigatory, evidentiary, and time restrictions on the Attorney General in complying with that procedure. 28 U.S.C. § 592(a).

This interpretation of the term "requirements" is in line with Congress' example of a situation in which the court would award attorneys' fees. The 1982 Senate Report stated:

Reimbursement [for "extraordinary expenses"] may be warranted for example, in instances where the special prosecutor duplicates actions which have been taken by the Attorney General during the preliminary investigation.[26]

This example demonstrates one instance in which the "requirements" of the Act might cause a qualifying subject to incur substan-

---

**24.** Whether the increased cost to subjects is caused by the independent counsel investigation or by subjecting a *high*-government official to investigation is problematic.

**25.** 28 U.S.C. §§ 591(d)(2), 592(a)(1); *see also In re INSLAW,* 885 F.2d 880, 881 (D.C.Cir.1989).

**26.** For full text see *supra* at 444.

tial additional attorneys' fees because of the Act's requirements as outlined above.

Other cases in which the special division has awarded fees have included a finding that the "requirements" of the Act caused the subject of the investigation to incur attorneys' fees that he would not have incurred in an investigation of similar allegations conducted outside the Act, either because the requirements of the Act were not complied with, they created very substantial duplications in the independent counsel's investigation, or unique factual features of the case coupled with the procedural requirements prevented the Attorney General from disposing of the case during the preliminary investigations. For further discussion of these cases, see *supra* at 438–439.

*Effect of legislative history.* The foregoing legislative history suggests that it is unnecessary for us to compare the thoroughness and exhaustiveness of the Independent Counsel's investigation and prosecution of Nofziger with an investigation and prosecution of the same allegations by the Department of Justice. In other words, because he was investigated by independent counsel instead of outside the Act, *a different standard of the criminal law,* as Congress used that phrase, was not applied to him, *i.e.,* he was not subjected to an investigation that he would not have been subjected to in the absence of the Act; nor "a more rigorous application" or "a harsher standard" or "a stricter application." In this respect, his case is not similar to that of Jordan who was investigated for a criminal offense that the Department would not have pursued against a private citizen. In Nofziger's case there was no "clear Department policy" [27] *not* to prosecute former officials for violations of section 207(c), *see infra* at 447–48, nor was there a prosecution policy that section 207(c) required a showing of "knowledge." Furthermore, no duplication is shown and the Act did not restrain the Attorney General's preliminary investigation so as to prevent him from disposing of the case at an early stage, without requesting appoint-

ment of an independent counsel. For these and other reasons, *infra,* it is not necessary to compare the thoroughness of independent counsel's investigation to an investigation of the same allegations by the Department.

With reference to the thoroughness of the investigation we comment only that Nofziger's Petition reflects a lack of knowledge of the thoroughness with which United States Attorneys, the Department of Justice, and the Federal Bureau of Investigation relentlessly investigate and prosecute violations of federal criminal law. *See supra* at 437–438. All one need do is read the daily newspapers reporting cases in which the federal government spends years investigating and prosecuting *local* corrupt officials; e.g., the Greylord investigations in Chicago, and the recent prosecution of state legislators in California and South Carolina. In the federal field, the relentless investigation and prosecution of the Defense Procurement offenses and the members of Congress prosecuted in the Abscam cases should not be overlooked. Other instances are too numerous to mention.

Furthermore, Nofziger's assertion that he was being used as a "guinea pig" to "test" the statute is completely unfounded. *Petition* at 8. As is the suggestion that an "uninterpreted" statute cannot be enforced. *Petition* at 4, 9. Federal statutes prohibiting criminal conduct go into effect immediately upon approval. *United States v. Casson,* 434 F.2d 415 (D.C.Cir.1970). They carry no immunity for first offenders.

(d) Investigation and trial. The investigation and trial of Nofziger appears to have been a regular prosecution of four separate substantial felonies.

Independent Counsel by his appointment was required to investigate Comet Rice, but he terminated this investigation on discovering that the Comet Rice matter was not of "direct and substantial interest" to the White House. *Final Report* at 12–15. The MEBA and Fairchild cases had not been included in the Application of the Act-

---

**27.** 1982 Senate Report at 14; *see supra* at 444.

ing Attorney General but it is normal for United States Attorneys to investigate other matters that come to light during a grand jury investigation. Some such matters may not lead to indictment. Where Nofziger differs from most other prosecutions under the Independent Counsel Act is that two additional alleged felonies were uncovered *and indicted.* Nofziger has no reason to complain of the thoroughness of the investigation.

As described in the margin, the prosecution from the beginning of the investigation to the end of the trial proceeded at about the speed of the average major criminal trial of this type and magnitude in the District of Columbia. There was nothing extraordinary in the government response to Nofziger's appeal that appears to be chargeable to any special requirement brought about by the Act.[28]

Furthermore, the consideration and innate fairness shown by Independent Counsel (1) when he decided not to retry Nofziger, (2) when he dropped the Comet Rice charges, and (3) when he voluntarily dismissed the two 207(a) counts, support a conclusion that the investigation and prosecution was prompt, fair and not overzealous. The two 207(a) counts that were dismissed were the most serious offenses since they alleged that Nofziger "when he was an officer ... of the executive branch *participated personally and substantially"* in the matters he later lobbied.

5. Comparison to *In re Jordan.*

Nofziger also attempts to compare his indictment and prosecution, which he alleges was the first under section 207(c), with that of Jordan (*In re Jordan,* 745 F.2d 1574 (D.C.Cir.1984)). To that end he likens his case to Jordan's who he alleges was "pros-

**28.** Independent Counsel McKay was appointed on February 7, 1987. He then proceeded expeditiously to arrange for private office space, acquire the required equipment and assemble his staff lawyers, paralegals, secretaries and other office assistants. Grand jury testimony began on March 10, 1987. By mid-March the Wedtech allegations were supported. *Final Report* at 11. Apparently the Comet Rice investigation was terminated in this period. Within the next three months investigation was conducted of similar offenses by Nofziger involving Fairchild Republic Corporation and the Marine Engineers Beneficial Association that had turned up in the interim. The investigation was extended three times upon Nofziger's request. The grand jury indictments were returned on July 16, 1987. The summer months were devoted to pretrial motions, briefs and arguments. Discovery motions were decided on October 16, 1987; the issue concerning statutory interpretation was decided on November 10, 1987, and after pretrial motions the actual trial began on January 19, 1988. Tr. 933. After twelve days of actual trial the jury returned a guilty verdict on three counts on February 11, 1988 and Nofziger was sentenced on April 8, 1988. *Final Report* at 19.

It thus took about four months from the start of the grand jury investigation to indictment, about six months from indictment to trial, and about two and one-half weeks for the trial—a total of eleven months of broken activity. The actual presentation of the trial testimony was accomplished in 14 trial days. There were 22 government witnesses, 6 defense witnesses, 81 exhibits and 2702 pages of actual trial testimony. All government witnesses occupied posi-

tions from which one could conclude at the outset that their testimony was credible and relevant to the charges:

Rose Marie Monk—Nofziger employee at White House; David A. Keene—lobbyist for Marine Engineers Beneficial Association (MEBA); Carmelita Amar—Controller of MEBA; Craig Fuller—Vice-President's Chief of Staff at the White House; Dr. John Lehman—then Secretary of the Navy; Edward John Rollins, Jr.—then Deputy Assistant to the President; Elizabeth Johnson—Nofziger and Bragg employee; Nancy Guiden—White House and Nofziger employee; William Davis—White House Uniform Secret Service; Mario Moreno—former Welbilt employee; Stephen Denlinger—pleaded guilty in Welbilt case in New York; James E. Jenkins—Deputy Counselor to President; James C. Sanders—prior SBA Administrator; Thomas A. Guarino—Executive Vice-President, Fairchild Republic Corporation; Donald Ray Templeman—Acting Administrator, Small Business Administration; Robert J. Stohlman—Army Deputy to Assistant Secretary for Research Development and Acquisition; J. Raymond Sculley—Army—Assistant Secretary for Research Development and Acquisition; David A. Stockman—Former Director of the Office of Management and Budget; Richard Martin Millman—Fairchild Industries attorney; Horace Russell—Air Force Brigadier General, with National Security Council from July 1980 until August 1984; Richard Levine—Staff, National Security Council; Edwin Meese III—U.S. Attorney General, Counselor to the President January 21, 1981–February 25, 1985.

ecuted [actually only investigated] where *others* never had been." *Petition* at 6. In this respect, however, Jordan's and Nofziger's cases are not comparable. Nofziger was indicted. Jordan was *not* indicted. The allegations against Jordan, at best, involved a minor offense that "would not have ordinarily been subject [even] to federal *investigation*," much less indictment, under Department of Justice criminal law enforcement policies. *See In re Donovan,* 877 F.2d at 984.

In contrast, the brash violation by Nofziger, Tr. 3555–56, 3559–60, a former high-government official, of the one-year anti-lobbying prohibition that allegedly commenced within two months and 17 days after he left his White House office, is an alleged felony and an offense of substantially greater culpability than the alleged misdemeanor involved in *Jordan.* There is no Justice Department policy whatsoever against investigating and prosecuting 207(a) or (c) offenses as there was against even investigating, much less prosecuting Jordan for his alleged misdemeanor. Many prosecutions of 207(a) (and (c) type) offenses have been undertaken. *See* 18 U.S. C.A. § 207, "Historical Notes" and "Notes of Decisions." Section 207(c) represents a recent expansion. Pub.L. No. 95–521, Title V, § 501(a), 92 Stat. 1865 (1978).

That no indictment had *allegedly* been returned for a specific violation of section 207(c) prior to the several counts alleging Nofziger's improper lobbying activities in 1982 for three separate clients, does not support a conclusion that the Department of Justice had a nonprosecution policy for section 207(c) or 207(a) offenses.[29] Rather it indicates a high level of compliance with

the requirements of the statute by former high-government officials and lower-level officials and employees who left office during the short period the law was in effect preceding Nofziger's indictment.

6. The Department of Justice Prosecution Policies—Department of Justice Personnel Regulation 28 C.F.R. §§ 45.735–1(b) and 7(d).

Section 594(f) of the Act requires independent counsels to "comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws." Nofziger contends that the Independent Counsel did not "comply with the written ... policies of the Department," *i.e.,* with the "Standards of Conduct" of the Department of Justice (Personnel Regulations), 28 C.F.R. § 45.735–7(d),[30] which he alleges constituted an "enforcement policy" of the Department. *Petition* at 7. The referenced regulation, however, is a *personnel* regulation that merely *"paraphrases"* section 207(c) along lines comparable to the court's decision in *Nofziger, supra.* Nevertheless, from this, Petitioner asserts that Independent Counsel failed to comply with the "prosecution policy" of the Department of Justice in that the counts of the indictment based on section 207(c) did not conform to the paraphrase of 28 C.F.R. § 45.735–7(d).

This same contention, relying on the *personnel regulation,* was argued to the Court of Appeals and its construction of the statute partly relied on Nofziger's representation on that point. *Nofziger,* 878 F.2d at 451–52. However, we cannot find that the attention of the Court of Appeals

---

**29.** In 1982 section 207(c) in its present form had been in effect for a little over three years. Pub.L. No. 95–521, Title V, § 501(a), Oct. 26, 1978, 92 Stat. 1864.

**30.** 28 C.F.R. § 45.735–7(d) provides:
No individual ... shall within one year after such employment has ceased, knowingly engage in *conduct* described in the next sentence. The prohibited knowing *conduct* is that of acting as attorney or agent for, or otherwise representing, anyone other than the United States in any formal or informal appearance before, or with the intent to influ-

ence, making any oral or written communication on behalf of anyone other than the United States in any formal or informal appearance before, or with the intent to influence, making any oral or written communication on behalf of anyone other than the United States (1) to the Department of Justice, or any employee thereof, (2) in connection with any rulemaking or any matter enumerated and described in paragraph (a)(2) of this section, and (3) which is pending before this department or in which it has a direct and substantial interest....

was ever directed to the limiting *prefatory language* of that *personnel* regulation which provides:

> [T]he paraphrased restatements of criminal and civil statutes contained in this part are designed for informational purposes *only* and *in no way constitute an interpretation or construction thereof that is binding upon the Department of Justice or the Federal Government.*

28 C.F.R. § 45.735–1(b) (emphasis added).

The italicized restriction negates Petitioner's argument that the personnel regulation constituted a prosecution policy. Section 45.735–7(d) is a regulation that is limited to regulating "conduct" of Department personnel. Nofziger was not a Justice Department employee. The personnel regulation does *not* constitute an *enforcement policy* that is "binding upon the Department of Justice." 28 C.F.R. § 45.735–1(a). Nothing could be clearer. The prosecution policies of the Department of Justice are set forth in the United States Attorneys' Manual and the *Principles of Federal Prosecution* (1980). There is no special direction with respect to section 207 offenses nor has any such prosecution practice been shown.

### 7. Department of Justice Involvement in Drafting the Indictment.

Another fact, of which the Court of Appeals in *Nofziger* was apparently unaware, is that Independent Counsel McKay, as authorized by the Act, did actually consult with

> Senior career prosecutors within the Department [of Justice who] concurred in the interpretation adopted by [the] Office [of Independent Counsel] and in the application of the facts to section 207(c).

*Final Report* at 7–8. As a result of said "Coordination With The Department of Justice," *id.,* the Department of Justice and Independent Counsel concurred in the construction of section 207(c) to be applied in the indictment. The Office of Government Ethics similarly concurred in McKay's construction of section 207(c). *Id.* Considering this and other facts set forth above, *see supra* at 446–47, it is folly to suggest that

if Nofziger had been investigated and prosecuted by Justice personnel, that he would not have been prosecuted or that his indictment would have alleged "knowledge" in the 207(c) offense, or that he would have fared differently. We therefore find there is no support for Nofziger's contention that Independent Counsel failed to follow the Department's *prosecution policies* or that a prosecution by Justice would have been materially different.

### E. *Partial Reimbursement of Attorneys' Fees.*

In the alternative, Nofziger contends that he should be allowed to obtain a *partial* reimbursement of attorneys' fees (1) for the investigation of Comet Rice, Inc. which was investigated but not indicted, (2) for the investigation of the allegations relating to Nofziger's violations of section 207(a) which resulted in an indictment on two Welbilt counts that were voluntarily dismissed with prejudice by the Government before trial, and (3) for the investigation of other matters that did not result in indictment. However, such requests for reimbursement are subject to the same standards as the principal request. They must satisfy the "but for" requirement, *i.e.,* they must involve fees "which would not have been incurred but for the requirements of [the Independent Counsel Act]." 28 U.S.C. § 593(f)(1).

In (1) the investigation and termination of the Comet Rice investigation, (2) the investigation, indictment and voluntary dismissal of the 207(a) counts, and (3) the investigation and termination without indictment of other matters that came to light during the investigation, the Independent Counsel was performing acts which are regularly performed by United States Attorneys in the performance of their regular duties. Such investigations did not involve extraordinary attorneys' services because of a stricter application of the criminal law than is regularly applied in prosecutorial investigations or that would not have been incurred "but for" the requirements of the Act. Therefore, for failure to satisfy the "but for" requirement, they are not reimbursable under the Act.

F. *Summary.*

In sum, the Independent Counsel conducted a most considerate and reasonable investigation and trial of a major criminal prosecution. *See supra* at 446–447. Nothing in the record indicates that Nofziger was subjected to a more rigorous or different application of the criminal law than would have been the case in a regular investigation and prosecution of a high-government official for violation of four major 207(c) offenses by the United States Attorney in the District of Columbia.

Upon consideration of all the files and records, a thorough consideration of the Petition and its reliance upon *In re Donovan* and other theories and authorities cited, and a personal reading of the entire trial transcript, Tr. volume 1 and 880–4170, for reasons heretofore stated it is concluded there is no showing that the attorneys' fees for which Nofziger became liable would not have been incurred but for the requirements of the Act.

### III. CONCLUSION

The Court of Appeals' decision in *Nofziger, supra,* effectively voids the indictment brought by Independent Counsel McKay. That decision establishes the law of the case and obviates the "no indictment" requirement of section 593(f)(1). However, the court is of opinion for all the reasons stated above, that the "but for" requirement of the Act is not satisfied. The attorneys' services in this case, to the extent indicated by this record, would have been required in any regular grand jury investigation, prosecution and appeal involving the offenses here investigated and prosecuted. The Petition for entitlement to attorneys' fees is therefore denied for non-compliance with the "but for" requirement of 28 U.S.C. § 593(f)(1).

*Judgment accordingly.*