**In re Oliver L. NORTH (Fernandez Fee Application).**

**Division No. 86–6.**

United States Court of Appeals, District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as amended).

Oct. 21, 1994.

Before: SENTELLE, Presiding, BUTZNER and SNEED, Senior Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

Joseph F. Fernandez was a subject of investigation by Independent Counsel Lawrence E. Walsh under the Ethics in Government Act of 1978 (Act), 28 U.S.C. § 591 et seq., as amended. Fernandez was twice indicted, but both indictments were dismissed. Pursuant to 28 U.S.C. § 593(f)(1), Fernandez seeks payment of the attorneys' fees he incurred as a result of the independent counsel's investigation. Pursuant to § 593(f)(2), the Department of Justice evaluated Fernandez's fee application. We agree with the Department's conclusion that Fernandez was validly indicted and therefore may not recover attorneys' fees.

### I

Fernandez was the CIA Chief of Station in Costa Rica from 1984 to 1987. Pursuant to the independent counsel's investigation of the Iran/Contra matter, a grand jury in the District of Columbia returned a five-count indictment against him. Fernandez objected to the indictment on the ground that venue was improper for four of the five counts. On motion of the independent counsel, the court dismissed the entire indictment without prejudice. Subsequently, a grand jury in the Eastern District of Virginia indicted Fernandez on four counts, charging him with having made criminally false and misleading statements in the course of responding to investigators from the Tower Commission and the CIA's Office of the Inspector General.

After his second indictment, Fernandez invoked the Classified Information Procedures Act (CIPA), 18 U.S.C.App. III & Supp. (1994). CIPA balances the government's need to prevent the disclosure of classified

information against the need of criminal defendants to use classified information in their defense. If the Attorney General objects to disclosure of classified information that is essential to the accused's defense, the court may dismiss the indictment. CIPA § 6(e)(2). The procedures followed by the district court in applying CIPA are described in *United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990). For the purpose of this opinion, it is sufficient to note that although the indictment was valid, the district court dismissed it because of the Attorney General's objection to Fernandez's proposed disclosure of classified information. The court of appeals affirmed the district court's judgment. 913 F.2d at 164.

## II

Section 593(f)(1) authorizes the court to award attorneys' fees to a person who is a subject of the independent counsel's investigation if no indictment is brought against the person and if other conditions, which are not pertinent to this case, are met.

Fernandez asserts that neither of his indictments was valid under the Act. He claims that the filing of the first indictment in the District of Columbia, where venue was improper for four of the five counts, was an abuse of prosecutorial power by the independent counsel. This abuse, Fernandez argues, renders the indictment invalid. He claims that the second indictment was likewise a nullity, on the ground that the independent counsel failed to follow Department of Justice guidelines relating to prosecutions involving classified information. Had he done so, Fernandez argues, he would surely not have brought the indictment. According to Fernandez, the independent counsel's disregard of the Department of Justice guidelines renders his actions *ultra vires* and nullifies the indictment. We need not address the first argument, since the second indictment is clearly a bar to Fernandez's recovery of attorneys' fees.

Section 594(f) states: "An independent counsel shall, except [where not possible,] comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws."

Section 12(a) of CIPA requires the Department of Justice to promulgate guidelines for determining when to prosecute cases that might involve disclosure of classified information. The guidelines provide:

Where, in the judgment of the Attorney General, it appears that the prosecution of a violation of federal law may result in the disclosure of classified information, the Attorney General shall determine whether the potential damage to the national security that might result from such disclosure outweighs other federal interests that would be served by the prosecution of the offense. If it is determined, after review of all relevant factors, that the potential damage to national security interests posed in prosecuting such a case outweighs other federal interests in proceeding with prosecution, prosecution of the offense may be declined.

In making this determination, the Attorney General shall assess all relevant information and evidence, consult with and seek the advice of the appropriate interested departments and agencies, and, whenever appropriate, fully utilize the procedures set out in the Classified Information Procedures Act of 1980 in order to assess more accurately the probability that classified information would be disclosed if the case were prosecuted, and the likely nature and extent of such disclosure.

Attorney General's CIPA Guidelines, § 3.

Fernandez has premised his fee application on a misunderstanding of the relationship between CIPA and a criminal prosecution. Contrary to the fee application's assumption, neither CIPA nor its guidelines necessarily contemplates resolution of classified information issues before an indictment is returned. The guidelines direct the prosecutor to review all relevant factors in determining whether "proceeding with prosecution" is justified. Guidelines § 3. In making this determination, the prosecutor may, "whenever appropriate," utilize the procedures in CIPA. *Id.* A party can only trigger the procedures in CIPA "after the filing of the indictment or information" in a case. CIPA § 2. Thus, any determination made with the aid of CIPA procedures requires that the prosecutor first obtain an indictment.

In a case as complex as Fernandez's, CIPA's pretrial procedures were clearly an

appropriate route for the independent counsel to take. The CIPA process requires a trial court to make a number of highly discretionary rulings on complex and sensitive issues. Classified information may be ruled irrelevant to the defendant's case or inadmissible on other grounds. If the information is relevant, the court may still preclude its admission by allowing the government to substitute a summary or stipulation in its place. If a proposed substitution is ruled insufficient, the government may choose to allow disclosure of the information rather than risk having the case dismissed. Even if the Attorney General files an affidavit under § 6(e) to bar disclosure of the information, the court may simply drop certain counts from the indictment rather than dismiss it entirely. Finally, the prosecutor has a right to appeal adverse decisions of the district court before trial.

Moreover, as the Department of Justice's evaluation points out, the independent counsel has prosecuted other high-ranking government officials whose cases involved large amounts of classified information. *See, e.g., United States v. North,* 910 F.2d 843 (D.C.Cir.1990); I Independent Counsel's Final Report 108–11, 125, 233 n. 3 (CIPA issues in North's, Poindexter's, and George's trials).

We reject Fernandez's argument that, faced with this statutory process, the independent counsel should have known that a prosecution of Fernandez would inevitably result in a dismissal of the indictment. Whether the classified information on which Fernandez relied for his defense would ultimately preclude his trial was certainly an open question prior to the indictment and subsequent CIPA proceedings. We conclude that the independent counsel complied with the policies of the Department of Justice in satisfaction of the requirements of § 594(f). His decision to seek an indictment despite Fernandez's reliance on classified information did not render the indictment invalid or entitle Fernandez to attorneys' fees.

### III

Fernandez cites *In re Nofziger,* 925 F.2d 428 (D.C.Cir.1991), in support of his claim that the indictment against him was a "nullity." In that case, the court of appeals held that since the indictment did not allege an essential element of the offense, the indictment was invalid. *United States v. Nofziger,* 878 F.2d 442, 454 (D.C.Cir.1989). In a decision on Nofziger's subsequent fee application, this court held that Nofziger was not indicted within the meaning of the Act, concluding that "it would be absurd to construe the statute as intending to treat an *invalid* indictment the same as a *valid* indictment." *Nofziger,* 925 F.2d at 434. Because the indictment against Fernandez was valid, *Nofziger* does not support his fee application.

### IV

In enacting § 593(f)(1), Congress intended that attorneys' fees be awarded to a person only "if no indictment is brought" against that person. Because a valid indictment was brought against Fernandez, his petition for attorneys' fees is denied.

*Judgment accordingly.*