**In re: Samuel R. PIERCE, Jr.**
**(Sanders Fee Application).**

**Division No. 89–5.**

United States Court of Appeals,
District of Columbia Circuit.

Filed Dec. 21, 1999.

Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.

## ORDER

This matter coming to be heard and being heard before the Special Division of the Court upon the petition of R. Carter Sanders for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith that the petition is not well taken, it is hereby

**ORDERED, ADJUDGED,** and **DE-CREED** that the petition of R. Carter Sanders for attorneys' fees he incurred during the investigation by Independent Counsels Arlin M. Adams and Larry D. Thompson be denied.

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed PER CURIAM.

PER CURIAM:

R. Carter Sanders petitions this court under Section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994) (the "Act"), for reimbursement of attorneys' fees in the amount of $17,500.00 that he incurred during and as a result of the investigation conducted by Independent Counsels ("IC") Arlin M. Adams and Larry D. Thompson. Because we conclude that Sanders has not carried his burden of showing that he was a subject of the investigation and that the fees would not have been incurred but for the requirements of the Act, we deny the petition in its entirety.

### Background[1]

In 1978 Congress established the moderate rehabilitation ("mod rehab") program

---

**1.** We have had recent occasion to review the facts of this matter in *In re Samuel R. Pierce, Jr. (Olivas Fee Application),* 178 F.3d 1350 (D.C.Cir., Spec. Div., 1999) (per curiam). Rather than replow recently tilled ground, we have adopted much of the language in the background portion of this opinion, and, where applicable, a portion of the analysis from that decision.

within the U.S. Department of Housing and Urban Development ("HUD"). This program encouraged developers to upgrade moderately substandard housing units for occupation by low income families. In 1988 HUD's Inspector General ("IG") conducted an audit of the mod rehab program as administered from 1984 through 1988 and found that the program was not being administered efficiently, effectively, or economically. The Inspector General's audit report triggered congressional investigations into abuses, favoritism, and mismanagement at HUD during the 1980s under the tenure of HUD Secretary Samuel R. Pierce, Jr. R. Carter Sanders, the fee petitioner here, was Associate General Deputy Assistant Secretary of Housing/Deputy Federal Housing Commissioner during a portion of the time that Pierce was Secretary. Subsequently, Sanders returned to the private sector as a consultant, assisting local housing authorities to obtain mod rehab funding from HUD. Sanders Application at 1.

Based on information elicited during the congressional investigations, the House Judiciary Committee wrote to Attorney General Richard Thornburgh seeking the appointment of an independent counsel to investigate the matter. Following a preliminary investigation, Attorney General Thornburgh applied to this court for appointment of an independent counsel. On March 1, 1990, we appointed former United States Circuit Judge Arlin Adams[2] as independent counsel "to investigate ... whether Samuel R. Pierce, Jr., and other [HUD] officials may have committed the crime of conspiracy to defraud the United States or any other Federal crimes ... relating to the administration of the selection process of the Department's Moderate Rehabilitation Program from 1984 through 1988." Order Appointing Independent Counsel, March 1, 1990.

The IC conducted a comprehensive investigation ultimately confirming a widespread pattern of corruption at HUD during Pierce's tenure. Although the IC announced on January 11, 1995, that he would not seek indictment of Pierce, during the course of the investigation seventeen (17) other persons were charged with and convicted of federal crimes as a result of the IC's investigation. That investigation and the indictments ranged well beyond the core facts of the original application for appointment of independent counsel. Of particular reference to the petitioner before us, in May of 1990 the IC served a subpoena on Sanders seeking documents related to Sanders' work while he was an official at HUD as well as his work on mod rehab projects after he left HUD. Sanders Application at 6. He later voluntarily appeared for an interview at the IC's office. IC's Evaluation at 3.

The IC's investigation is now complete. Pursuant to the statute, the IC submitted a final report to this court on March 30, 1998. *See* 28 U.S.C. § 594(h)(1)(B). We ordered the report made public by order of October 27, 1998. Thereafter, Sanders, pursuant to Section 593(f)(1) of the Act, petitioned this court for reimbursement of his attorneys' fees. As directed by Section 593(f)(2) of the Act, we forwarded copies of Sanders' fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

## Analysis

Unique in the criminal law structure of the United States, the Ethics in Government Act provides for reimbursement of attorneys' fees expended by subjects in defense against an investigation under the Act. Specifically, 28 U.S.C. § 593(f)(1) states:

2. Independent Counsel Adams resigned in May of 1995. This court appointed his deputy, Larry D. Thompson of the Atlanta bar, to succeed him.

Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

■ Because the Act "constitutes a waiver of sovereign immunity it is to be strictly construed." *In re Nofziger,* 925 F.2d 428, 438 (D.C.Cir.1991) (per curiam). Therefore, the Act provides only reimbursement for attorneys' fees that survive an elemental analysis determining whether the petitioner is the "subject" of the independent counsel's investigation, incurred the fees "during" that investigation, and would not have incurred them "but for" the requirements of the Act. The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application),* 94 F.3d 685, 690 (D.C.Cir.1996) (per curiam). We conclude that Sanders has not met either the "subject" or the "but for" requirement.

### A. "Subject" Status

■ We have previously defined the term "subject" as a person whose conduct is within the scope of the independent counsel's investigation in such fashion that "the Independent Counsel might reasonably be expected to point the finger of accusation" at him. *In re North (Dutton Fee Application),* 11 F.3d 1075, 1078 (D.C.Cir.1993) (per curiam); *see also In re North (Shultz Fee Application),* 8 F.3d 847, 850 (D.C.Cir.1993) (per curiam). Although Sanders argues forcefully that he fits within this definition, we conclude that he has not carried his burden of establishing that he was in fact a subject of the IC's investigation.

Sanders' main argument, in essence, is that because the IC investigated the mod rehab program, and because he was in-volved with the mod rehab program, he was a subject of the IC's investigation. Reply at 3. We are not persuaded, however, that the IC was focused on any possible criminal culpability by Sanders during the IC's investigation. Sanders' involvement with the IC's investigation appears to have been minimal: he was served one subpoena for documents at the beginning of the IC's investigation, and three years later was interviewed by the IC's staff. He had no other contacts with the IC's office. *See, e.g., In re North (Gregg Fee Application),* 57 F.3d 1115, 1116 (D.C.Cir.1995) (per curiam). He was never informed by the IC that he was a subject of the investigation. *See, e.g., In re North (Haskell Fee Application),* 74 F.3d 277, 280 (D.C.Cir.1996) (per curiam). There is no evidence before us that anyone he was associated with was targeted by the IC. *See, e.g., In re North (Teicher Fee Application),* 48 F.3d 1267, 1268–69 (D.C.Cir.1995) (per curiam). And there is no mention of him in the IC's Final Report. *See, e.g., In re North (Adkins Fee Application),* 33 F.3d 76, 76–77 (D.C.Cir.1994) (per curiam).

■ Sanders also argues that it was "plainly evident from the inception of the [IC's] investigation that [he] faced 'a realistic possibility . . . [that he] would become a defendant'" because that investigation was based on the congressional and HUD IG investigations which, according to Sanders, "already had inquired extensively into Mr. Sanders' involvement with certain MRP [mod rehab] projects." Sanders Application at 8 (internal citation omitted). It appears, however, that the only contact Sanders had with these previous investigations was an administrative subpoena seeking documents that was served on him by the HUD IG. In sum, we conclude that Sanders could not consider himself to be under a "reasonable apprehension of prosecution" by the IC during his investigation. *In re North (Gadd Fee Application),* 12 F.3d 252, 256 (D.C.Cir.1994) (per curiam).

## B. Fees Not Incurred "But For" the Requirements of the Act

As we have held, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C.Cir. 1989) (per curiam). The purpose of awarding only fees that would not have been incurred "but for" the Act is to ensure that "officials [and here derivative 'subjects'] who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive officials such as the United States Attorney. *Id.* at 452–53 (citing S.REP. No. 97–496, 97th Cong., 2d Sess. 18 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the special prosecutor [independent counsel] law")).

█ As we have stated "[t]he most difficult element for a fee applicant to establish under the Act is that the fees 'would not have been incurred but for the requirements of [the Act].'" *In re North (Bush Fee Application)*, 59 F.3d 184, 188 (D.C.Cir.1995) (per curiam) (quoting *Dutton*, 11 F.3d at 1079). In part this is so because the element requires a petitioner to prove a negative and one with a high component of speculation. In part, though, it is difficult because the law contemplates that it should be difficult, that such fees will not be a common thing. As we stated above, the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only that they will be reimbursed for those legal fees that would not have been incurred by a similarly-situated subject investigated in the absence of the Act.

Nonetheless, we have found that petitioners qualify for an award of fees in the face of the but-for test in at least four (4) circumstances:

1. When the independent counsel's investigation substantially constituted duplication of the preliminary investigation conducted by the Department of Justice. *See In re Olson*, 884 F.2d 1415, 1420 (D.C.Cir.1989) (per curiam); *Dutton Fee Application*, 11 F.3d at 1080.

2. When the petitioning subject has been "prejudiced by the Department of Justice's failure to comply with the substantial protective features of the Act." *In re Nofziger*, 925 F.2d at 438 (citing *In re Meese*, 907 F.2d 1192 (D.C.Cir.1990) (per curiam)).

3. When in the absence of the requirements of the Act " 'the case could have been disposed of at an early stage of the investigation,' " without subjecting the petitioning subject to the conditions that led to his incurring the fees sought. *In re Segal (Sagawa Fee Application)*, 151 F.3d 1085, 1089 (D.C.Cir.1998) (per curiam) (quoting *In re Nofziger*, 925 F.2d at 438).

4. Not wholly distinct from No. 3, *supra*, when "high public officials [or derivative subjects] were investigated under the Act in circumstances where private citizens would not [have been] investigated." *In re Nofziger*, 925 F.2d at 442; *see also Dutton*, 11 F.3d at 1080.

█ Sanders argues that his case falls into categories (1) and (3). As to (1), Sanders claims that the IC duplicated the investigations of Congress and the HUD IG, and that such duplication is sufficient to satisfy the "but for" element. For authority on his position Sanders cites to *In re Olson (Perry Fee Application)*, 892 F.2d 1073 (D.C.Cir.1990) (per curiam), and *In re Olson*. In *Perry* we held that the IC's investigation of Perry was duplicative because the investigation by the Public Integrity Section of the DOJ had recommended against prosecution in the matter. *See* 892 F.2d at 1074. Similarly, in *In re Olson*, we found that the Independent Counsel's investigation was duplicative because it covered the same ground "that

had been covered by the preliminary investigation of the Department of Justice." 884 F.2d at 1420. In both those cases, then, it was duplication of the preliminary investigation that satisfied the "but for" element, not duplication of any other investigation, and we conclude that this is what the Congress intended when it first passed the attorneys' fees provision in 1982. We find support for this conclusion in two areas.

First, § 593(f)(1) of the Act states that fees may be awarded to individuals who would not have incurred the fees "but for the *requirements* of [the Act]." (emphasis added) Consequently, as we noted in *Olivas,*

> attorneys' fees are to be awarded to those who have incurred the fees not because of the Act itself (and therefore the appointment of the independent counsel *per se),* but because of the *requirements* of the Act. *In re Nofziger,* 925 F.2d at 445. And *requirements* "refers to the special limitations and procedures established by the Act," *e.g.,* the two-step investigatory procedure by the Attorney General and the restrictions on the Attorney General in complying with that procedure, *id.* . . .

178 F.3d at 1355 (emphasis in original). Included in this "two-step investigatory procedure" is the preliminary investigation. *See* 28 U.S.C. § 592.

Second, the 1982 Senate Committee Report on the Ethics in Government Act, referring to attorneys' fees, stated that "[r]eimbursement may be warranted . . . in instances where the [independent counsel] duplicates actions which have been taken by the Attorney General during the *preliminary investigation.*" S.REP. No. 97–496, 97th Cong., 2d Sess. 19 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3555 (emphasis added). As Sanders has put forth no evidence that the IC's investigation duplicated the preliminary investigation conducted by the Attorney General, he does not fit into category (1).

■ As to category (3), Sanders claims that the Attorney General was reluctant to have an independent counsel appointed but that the Act compelled the Attorney General to do so. For evidence of this reluctance, Sanders first points to the Attorney General's Application for Appointment of Independent Counsel ("Application for Appointment"), in which the Attorney General stated that he was encumbered in his preliminary investigation by the constraints imposed by 28 U.S.C. § 592 on using grand juries, subpoenas, and grants of immunity. Sanders likens this case to *In re Donovan,* 877 F.2d 982 (D.C.Cir. 1989) (per curiam), in which we held that the "but for" requirement was satisfied where the Attorney General, because of the strictures of the Act, could not convene a grand jury, plea bargain, or issue subpoenas and as a result was required to refer the matter to an independent counsel. In that case, however, these strictures prevented the Attorney General from properly evaluating the single witness who was of extremely questionable credibility, and upon whom the single allegation of alleged wrongdoing was based. *See In re Donovan,* 877 F.2d at 990. Here, in contrast, the Attorney General in his Application for Appointment, after citing the strictures placed upon him by the Act, went on to state that any further "determination at this time is made especially difficult by the breadth of the allegations and the fact that a number of the figures central to the alleged conspiracy, including Secretary Pierce . . . have declined to be interviewed . . . ." Application for Appointment at 5 (emphasis added). Consequently, as we noted in *In re Pierce (Kisner Fee Application),* 178 F.3d 1356 (D.C.Cir.1999) (per curiam), "[t]he convoluted nature of the corruption involved and the high profile identity of the suspects and defendants would no doubt have resulted in a complex and lengthy investigation with or without the appointment of an independent counsel." *Id.* at 1361.

In a further attempt to show the Attorney General's reluctance in having an inde-

pendent counsel appointed, Sanders references a newspaper article which quotes an anonymous source stating that prosecutors in the DOJ allegedly recommended to the Attorney General that the investigation be shut down for lack of evidence. Even if it were accurate, which is highly questionable considering the not-for-attribution source, the information is, as the IC points out, irrelevant. Although certain prosecutors may recommend against investigating a certain matter, this fact gives us little guidance in trying to determine what an Attorney General will ultimately decide to do in the matter. This is not a situation similar to *Perry*, 892 F.2d at 1074, where the Public Integrity Section definitively recommended against prosecution; nor is it similar to *Sagawa*, 151 F.3d at 1089; and *In re Segal (Segal Fee Application)*, 145 F.3d 1348, 1352 (D.C.Cir.1998) (per curiam), in which the Attorney General stated in her Application to the Court requesting the appointment of an independent counsel that "the Department of Justice would in all likelihood exercise its discretion to decline to prosecute this case as a criminal matter." Here, we can discern nothing in the Attorney General's Application for Appointment that would lead us to believe that he was in any way hesitant to have an independent counsel appointed based on the substance of the evidence available to him.

In sum, we cannot agree with Sanders' statement that "had the Independent Counsel Act not restricted the Attorney General's ability to conduct a thorough preliminary investigation, it is possible, given Attorney General Thornburgh's obvious reluctance, that no independent counsel would have been appointed." Sanders Application at 12. Indeed, as we stated in *Kisner*, if the IC had not investigated this matter then "the Attorney General or other investigative authority would have pursued allegations of corruption as deep and widespread as those occasioning the Independent Counsel's investigation." 178 F.3d at 1360; *see also Olivas*, 178 F.3d at 1355.

## Conclusion

The petition of R. Carter Sanders for reimbursement of attorneys' fees is denied for failure to comply with the "subject" and "but for" requirements of 28 U.S.C. § 593(f)(1).