## In re Samuel R. PIERCE, Jr.
### (Pierce Fee Application)

### Division No. 89–5.

United States Court of Appeals, District of Columbia Circuit.

Filed June 6, 2000.

Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.

Opinion for the Special Court filed PER CURIAM.

## ORDER

PER CURIAM:

This matter coming to be heard and being heard before the Special Division of the Court upon the petition of Samuel R. Pierce, Jr. for reimbursement of attorneys' fees and costs pursuant to Section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994), and it appearing to the court for the reasons set forth more fully in the opinion

filed contemporaneously herewith that the petition is not well taken, it is hereby

**ORDERED, ADJUDGED,** and **DE-CREED** that the petition of Samuel R. Pierce, Jr. for attorneys' fees he incurred during the investigation by Independent Counsels Arlin M. Adams and Larry D. Thompson be denied.

## ON APPLICATION FOR ATTORNEYS' FEES

Samuel R. Pierce, Jr. petitions this court under Section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994) (the "Act"), for reimbursement of attorneys' fees in the amount of $276,580.90 that he incurred during and as a result of the investigation conducted by Independent Counsels ("IC") Arlin M. Adams and Larry D. Thompson. Because we conclude that Pierce has not carried his burden of showing that the fees would not have been incurred but for the requirements of the Act, we deny the petition in its entirety.

## BACKGROUND

Samuel R. Pierce, Jr. served as Secretary of the U.S. Department of Housing and Urban Development (HUD) from 1981 to 1989. HUD administered many housing programs during that time period, including the moderate rehabilitation ("mod rehab") program, which was established by Congress in 1978 to encourage developers to upgrade moderately substandard housing units for occupation by low income families. Essentially, mod rehab funds were to be distributed to state or local Public Housing Authorities ("PHA's"), which, in turn, were to enter into mod rehab agreements with owners of low-income rental properties within their areas. In 1988, however, an examination by HUD's Inspector General found, *inter alia,* that the process used by HUD head-

quarters to allocate mod rehab funding to PHA's was undocumented and contrary to pertinent regulations; that former HUD officials and employees were actively participating in a large number of mod rehab projects as consultants and/or developers; and that there was little assurance that mod rehab units were allocated equitably to PHA's or that the projects were selected competitively. *See* 1 ARLIN M. ADAMS & LARRY D. THOMPSON, FINAL REPORT OF THE INDEPENDENT COUNSEL IN RE: SAMUEL R. PIERCE, JR. 2–3 (1998).

The examination by HUD's Inspector General triggered congressional investigations into abuses, favoritism, and mismanagement at HUD during the 1980s. Pierce testified before Congress in mid–1989 concerning the mod rehab program. Allegations of perjury concerning his testimony arose. He asserted his privilege against self-incrimination and refused to testify further. Subsequently, based on information elicited during the congressional investigations, the House Judiciary Committee wrote to Attorney General Richard Thornburgh seeking the appointment of an independent counsel to investigate the matter. Following a preliminary investigation, Attorney General Thornburgh applied to this court for appointment of an independent counsel. On March 1, 1990, we appointed former United States Circuit Judge Arlin Adams[1] as independent counsel "to investigate ... whether Samuel R. Pierce, Jr., and other [HUD] officials may have committed the crime of conspiracy to defraud the United States or any other Federal crimes ... relating to the administration of the selection process of the Department's Moderate Rehabilitation Program from 1984 through 1988." Order Appointing Independent Counsel, March 1, 1990. The IC's mandate was expanded several times thereafter, including an expansion to investigate whether perjury and other federal crimes may have been committed by Pierce.

---

**1.** Independent Counsel Adams resigned in May of 1995. This court appointed his deputy, Larry D. Thompson of the Atlanta bar, to succeed him.

The IC conducted a comprehensive investigation ultimately confirming a widespread pattern of corruption at HUD during Pierce's tenure. The investigation ranged well beyond the core facts of the original application for appointment of independent counsel. Ultimately, seventeen (17) persons were charged with and convicted of federal crimes as a result of the investigation. Pierce himself admitted that "[o]n a number occasions, [he] met or spoke privately with personal friends who were paid to obtain funding for mod rehab projects," and that he "failed to monitor and control ... the 'mod rehab' program, when it was being operated, at least in part, to benefit certain consultants, developers, and ex-HUD officials." Further, Pierce acknowledged that during his testimony before Congress his answers to certain questions "did not always accurately reflect the events occurring at HUD." Statement by the Honorable Samuel R. Pierce, Jr., December 15, 1994, *reprinted in* Independent Counsel's Evaluation of Pierce Fee Application ("IC Eval.") at Tab 1. Nevertheless, the IC declined to seek a criminal indictment of Pierce, citing as reasons "Secretary Pierce's age and multiple health problems, the conflicting evidence regarding the intent with which he acted, and the absence of any evidence that he or his family profited from his actions at HUD." Press Statement, Office of Independent Counsel, Jan. 11, 1995, *reprinted in* IC Eval. at Tab 2.

The IC's investigation is now complete. Pursuant to the statute, the IC submitted a final report to this court on March 30, 1998. *See* 28 U.S.C. § 594(h)(1)(B). We ordered the report made public by order of October 27, 1998. Thereafter, Pierce, pursuant to Section 593(f)(1) of the Act, petitioned this court for reimbursement of his attorneys' fees. As directed by Section 593(f)(2) of the Act, we forwarded copies of Pierce's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

## ANALYSIS

Unique in the criminal law structure of the United States, the Ethics in Government Act provides for reimbursement of attorneys' fees expended by subjects in defense against an investigation under the Act. Specifically, 28 U.S.C. § 593(f)(1) states:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

■ Because the Act "constitutes a waiver of sovereign immunity it is to be strictly construed." *In re Nofziger,* 925 F.2d 428, 438 (D.C.Cir.1991) (per curiam). Therefore, the Act provides only reimbursement for attorneys' fees that survive an elemental analysis determining whether the petitioner is the "subject" of the independent counsel's investigation, incurred the fees "during" that investigation, and would not have incurred them "but for" the requirements of the Act. The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application),* 94 F.3d 685, 690 (D.C.Cir.1996) (per curiam). We conclude that Pierce has not met the "but for" requirement.

■ As we have held, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case,* 890 F.2d 451, 452 (D.C.Cir. 1989) (per curiam). The purpose of awarding only fees that would not have been incurred "but for" the Act is to en-

sure that "officials who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive officials such as the United States Attorney. *Id.* at 452–53 (citing S.REP. No. 97–496, 97th Cong., 2d Sess. 18 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the special prosecutor [independent counsel] law")).

■ As we have stated, "[t]he most difficult element for a fee applicant to establish under the Act is that the fees 'would not have been incurred but for the requirements of [the Act].'" *In re North (Bush Fee Application),* 59 F.3d 184, 188 (D.C.Cir.1995) (per curiam) (quoting *In re North (Dutton Fee Application),* 11 F.3d 1075, 1079 (D.C.Cir.1993) (per curiam)). In part this is so because the element requires a petitioner to prove a negative and one with a high component of speculation. In part, though, it is difficult because the law contemplates that it should be difficult, that such fees will not be a common thing. As we stated above, the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only that they will be reimbursed for those legal fees that would not have been incurred by a similarly-situated subject investigated in the absence of the Act.

Pierce puts forth several arguments in support of his contention that in the absence of the Act either no investigation, or a much lesser investigation, would have resulted in this matter, and consequently the attorneys' fees incurred by him during the IC's investigation would not have come about "but for" the Act. For the reasons stated below, we do not find these arguments persuasive.

■ Pierce first argues that the "but for" element is satisfied where regular prosecutorial practices would not have resulted in any investigation. This is so in his case, Pierce claims, because staff prosecutors in the Public Integrity Section of the Department of Justice had concluded prior to the appointment of an independent counsel that no investigation of him was necessary. For evidence of this position by the Public Integrity Section, Pierce references certain contemporaneous newspaper articles reporting that staff prosecutors had recommended that the investigation of Pierce be shut down for lack of evidence. *See, e.g.,* Philip Shenon, *Criminal Inquiry Is Opened Into Ex–H.U.D. Chief's Acts,* N.Y. TIMES, Dec. 5, 1989, at A20.

Pierce cites to our decision in *In re Olson (Perry Fee Application),* 892 F.2d 1073 (D.C.Cir.1990) (per curiam), for the proposition that where an IC is appointed to investigate a subject despite the Public Integrity Section's recommendation to the contrary, the "but for" requirement is satisfied. In *Perry* we noted that the fee applicant was subjected to a duplicative investigation that he would not have been subjected to but for the Act because the Public Integrity Section had definitively decided not to recommend prosecution in that matter. *Id.* at 1074. Here, the suggestion that "but for" the Act the purported views of unidentified persons in the Public Integrity Section would have prevailed is speculative. As we noted in *In re Pierce (Sanders Fee Application),* 198 F.3d 899 (D.C.Cir.1999) (per curiam), the information contained in the referenced news articles "gives us little guidance in trying to determine what an Attorney General will ultimately decide to do in the matter." *Id.* at 905. We agree with the Department of Justice that the kind of pervasive and high-level corruption of a government program that occurred here would inevitably have come under scrutiny with or without an independent counsel law, and any investigation would necessarily have concerned itself with Pierce's involvement.

■ Pierce further argues that since the IC's original jurisdiction was expanded from investigation of one program over a four-year period to several programs over an eight-year period, and the investigation itself went on for almost five years, then he satisfies the "but for" element because he was subjected to a more rigorous application of the criminal law than he would have been in the absence of the Act. He relies on *In re Sealed Case,* 890 F.2d at 452–53, and *In re Meese,* 907 F.2d 1192, 1196–97 (D.C.Cir.1990) (per curiam), which held that when an independent counsel's investigation exposes a subject to a more rigorous examination than the ordinary citizen is likely to receive, the "but for" element is satisfied.

In *Sealed Case* we held that the fee applicant was subjected to a more rigorous application of the criminal law in part because his tax returns and financial dealings were examined for a period of nine years.[2] We noted in that case that the ordinary examination of a taxpayer would have been substantially less probing. *See* 890 F.2d at 454. No such less probing examination would have been made of Pierce's conduct in the absence of the Act. As we stated elsewhere referring to this same investigation, "[t]he convoluted nature of the corruption involved and the high profile identity of the suspects and defendants would no doubt have resulted in a complex and lengthy investigation with or without the appointment of an independent counsel." *In re Pierce (Kisner Fee Application),* 178 F.3d 1356, 1361 (D.C.Cir.1999) (per curiam).

Similarly, in *Meese,* we held that Attorney General Edwin Meese III was subjected to a more rigorous application of the criminal law, and satisfied the "but for" requirement, in part because the investigation concerning him as initially referred was greatly expanded and continued for fourteen months. We noted, however,

that Meese also fulfilled the "but for" requirement in part because no preliminary investigation pursuant to the Act was conducted prior to referral of the matter to the independent counsel by the Acting Attorney General; the referral "did not eliminate the necessity for compliance with the requirement ... that there be a preliminary investigation and finding of reasonable grounds to believe that further investigation or prosecution of [Meese] ... was warranted." 907 F.2d at 1197. Meese was subjected to a more rigorous application of the criminal law, then, because of both "the extreme expansion of the resulting investigation" *and* "the basis upon which the referral was made." *Id.* at 1201. Here, although the investigation was expanded beyond its original mandate and lasted for a number of years, the expansion occurred because the investigation itself revealed further evidence of fundamental corruption of a federal housing program and such crimes as perjury, bribery, and obstruction of justice. We are convinced that this matter would have been investigated for a significant period of time by any professional or politically appointed public prosecutor. Pierce was not, therefore, subjected to a more rigorous application of the criminal law than would have been applied to ordinary citizens.

■ Finally, Pierce contends that he was prejudiced by the provisions of the Act which prevented the Department of Justice from following its normal procedures. He notes that the Attorney General in his application for appointment of an independent counsel stated that he could not use grand juries, subpoenas, or grants of immunity to obtain evidence, and so was "constrained to conclude that further investigation may be warranted." *Application of Attorney General,* at 5, February 1, 1990. Citing to *In re Donovan,* 877 F.2d 982 (D.C.Cir.1989) (per curiam), and

---

**2.** We also based our holding that the fee applicant was subjected to a more rigorous application on the Attorney General's reference in his application for an independent counsel to the limitations placed upon him by the Act. *See infra.*

*In re Sealed Case,* Pierce argues that the "but for" test is satisfied where the Act's restrictions interfere with the Attorney General's ability to conduct a proper preliminary inquiry, and that if the Attorney General had not been so limited here then Pierce would have been subjected to a less thorough and extensive investigation.

In *Donovan* we found the "but for" requirement fulfilled where the Deputy Attorney General's application for the appointment of an independent counsel stated that " '[t]he Department of Justice's efforts to pursue this matter has been hampered by the limitations in the Act that preclude the Attorney General from convening grand juries, plea bargaining, granting immunity, or issuing subpoenas.' " 877 F.2d at 988. Had the Department of Justice not been so limited by the Act, then it could have found "that the principal witnesses were not credible and that there were no facts provable beyond a reasonable doubt that justified a prosecution," and the fee applicant would have been subjected to a much lesser investigation. *Id.* at 989.

In *Sealed Case* the Attorney General in his application for an independent counsel also cited to the limitations imposed on him by the Act, specifically stating that one of his reasons for requesting the appointment of an independent counsel was the Department of Justice's " 'inability to use compulsory process during a preliminary investigation.' " 890 F.2d at 453. We noted in that case:

> Not that the mere existence of these statutory restrictions satisfies the "but for" requirement in every case. But where, as here, the Attorney General in his application represents that the statutory restrictions have interfered with his ability to conduct an adequate preliminary investigation, *and the circumstances of the alleged offense indicate that, if the Attorney General were not so limited, [the] applicant might have been subjected to a lesser investigation, or perhaps exonerated at this early stage,*

the statutory limitations are factors that the court may rely upon in determining that the "but for" factor is satisfied. *Id.* (emphasis added). In both *Donovan* and *Sealed Case,* then, if there had been no statutory restrictions on the Attorney General in his preliminary investigation, there would have either been no further investigation or a much smaller investigation of the fee applicant. Pierce argues that if the Attorney General had not been so constrained in his case, then he likewise would have been subjected to a quicker, less thorough, and less extensive investigation. We cannot agree.

Although the Attorney General noted the constraints imposed upon him by law in deciding whether to seek an independent counsel in this matter, nothing in the Attorney General's filing or in any of the surrounding circumstances suggests that, absent those constraints, this investigation would have resulted in a lesser and speedier investigation of those involved. To the contrary, the Attorney General made specific reference to the "breadth of the allegations and the fact that a number of the figures central to the alleged conspiracy, including Secretary Pierce ... have declined to be interviewed." *Application of Attorney General,* at 5. As we stated in *Kisner,* if the IC had not investigated this matter, then "the Attorney General or other investigative authority would have pursued allegations of corruption as deep and widespread as those occasioning the Independent Counsel's investigation." 178 F.3d at 1360; *see also In re Pierce (Olivas Fee Application),* 178 F.3d 1350, 1355 (D.C.Cir.1999) (per curiam).

## CONCLUSION

The petition of Samuel R. Pierce, Jr. for reimbursement of attorneys' fees is denied for failure to comply with the "but for" requirement of 28 U.S.C. § 593(f)(1).