297 F.3d 1095
 In Re: Alexis M. HERMAN (Herman Fee Application).
 Division No. 98-2.
 United States Court of Appeals, District of Columbia Circuit.
 Filed August 6, 2002.
 COPYRIGHT MATERIAL OMITTED Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, As Amended.
 
 Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.
 Opinion of the Special Court filed PER CURIAM.
 
 
 1
 Separate opinion concurring in the judgment filed by Senior Circuit Judge CUDAHY.
 
 PER CURIAM:
 ORDER
 
 2
 This matter coming to be heard and being heard before the Special Division of the Court upon the petition of Alexis M. Herman for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 et seq. (1994), and it appearing to the court that the application is allowable only to the extent reflected in the opinion issued contemporaneously herewith*, it is hereby
 
 
 3
 ORDERED, ADJUDGED, and DECREED that the United States reimburse Alexis M. Herman for attorneys' fees and expenses she incurred during the investigation by Independent Counsel Ralph I. Lancaster in the amount of $12,625.75.
 
 ON APPLICATION FOR ATTORNEYS' FEES
 
 4
 Alexis M. Herman petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 et seq. (1994) (the "Act"), for reimbursement of attorneys' fees in the amount of $335,919.52 that she incurred during and as a result of the investigation conducted by Independent Counsel ("IC" or "OIC") Ralph I. Lancaster, Jr. Because we conclude that Herman has not carried her burden of showing that the fees would not have been incurred but for the requirements of the Act, we deny the petition except for those fees incurred for review and response to the IC's final report.
 
 BACKGROUND
 
 5
 In 1997 the U.S. Department of Justice ("DOJ") received information that then-Secretary of Labor Alexis M. Herman, while she was Special Assistant to the President in 1996, had engaged in possible illegal activity. The pertinent facts surrounding these allegations are as follows: In 1994 Vanessa J. Weaver, a close friend of Herman's, formed a partnership, International Investment for Business Development ("IIBD"), with Laurent J. Yene. In 1996 Singaporean Abdul Rahman entered into a retainer agreement with IIBD to promote a business of his in Africa. Weaver's partnership with Yene apparently ended soon thereafter, at which point Yene began making allegations of criminal conduct on the part of Weaver and Herman. In particular, Yene claimed that Herman, while Special Assistant to the President, had agreed to facilitate business for IIBD and another company co-owned by Weaver in exchange for a certain percentage of the profits made by the companies as a result of Herman's efforts. Additionally, Yene claimed that Herman improperly directed Weaver to solicit campaign contributions for the Democratic National Committee from clients of IIBD, including Abdul Rahman.
 
 
 6
 Thereafter, the Attorney General (hereinafter referred to as "AG" or "DOJ"), pursuant to section 592(a) of the Act, conducted a preliminary investigation to determine whether further investigation was warranted into whether Herman accepted the illegal payments or directed the solicitation of the illegal campaign contributions. On May 11, 1998, at the conclusion of the preliminary investigation, the AG, having determined that further investigation was warranted, submitted her application to us for the appointment of an independent counsel to look into the matter (hereinafter referred to as "Application").
 
 
 7
 On May 26, 1998, we appointed Ralph I. Lancaster, Jr. as independent counsel to further investigate the allegations. The investigation lasted almost two years and included numerous interviews, extensive document review, and substantial grand jury activity. No charges were brought against Herman. Abdul Rahman, however, was indicted on multiple counts of making illegal campaign contributions. Pursuant to the statute, the IC submitted a final report to this court on April 7, 2000. 28 U.S.C. § 594(h)(1)(B).
 
 
 8
 Herman, pursuant to section 593(f)(1) of the Act, has petitioned this court for reimbursement of the attorneys' fees that she incurred during the IC's investigation. As directed by section 593(f)(2) of the Act, we forwarded copies of Herman's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.
 
 ANALYSIS
 The Independent Counsel statute provides:
 
 9
 Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.
 
 
 10
 28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met: 1) the petitioner is a "subject" of the investigation; 2) the fees were incurred "during" the investigation; 3) the fees would not have been incurred "but for" the requirements of the Act; and, 4) the fees are "reasonable." See In re North (Dutton Fee Application), 11 F.3d 1075, 1077-82 (D.C.Cir., Spec. Div., 1993) (per curiam). The petitioner "bears the burden of establishing all elements of [her] entitlement." In re North (Reagan Fee Application), 94 F.3d 685, 690 (D.C.Cir., Spec. Div., 1996) (per curiam). There appears to be little dispute that Herman was a "subject," that her fees were incurred during the IC's investigation, and that, for the most part, her fees are reasonable. We will therefore limit our discussion to the third requirement, known as the "but for" test.
 
 
 11
 * * * * * * * * * *
 
 
 12
 We have previously held that "[a]ll requests for attorneys' fees under the Act must satisfy the `but for' requirement." In re Sealed Case, 890 F.2d 451, 452 (D.C.Cir., Spec. Div., 1989) (per curiam). And we have repeatedly observed that "[t]he most difficult element for a fee applicant to establish under the Act is that the fees `would not have been incurred but for the requirements of [the Act].'" In re North (Bush Fee Application), 59 F.3d 184, 188 (D.C.Cir., Spec. Div., 1995) (per curiam) (quoting Dutton, 11 F.3d at 1079). In order to establish eligibility for an award, the fee applicant must show that the amounts claimed are only those fees and expenses above and beyond those she would have incurred as a result of an investigation by the DOJ. In re Sealed Case, 890 F.2d at 452-53. As we stated in In Re Pierce (Olivas Fee Application), 178 F.3d 1350 (D.C.Cir., Spec. Div., 1999) (per curiam), "[i]f the investigative act generating the defensive costs would, in the absence of the Act, have been pursued by other authorities — `had the case been handled by the Department of Justice or other executive authorities rather than the Independent Counsel' — then Congress did not contemplate the award of counsel fees." Id. at 1355 (quoting Dutton, 11 F.3d at 1080).
 
 
 13
 Herman argues that she satisfies the "but for" requirement under two separate theories.
 
 
 14
 Duplication of preliminary investigation. We have in the past awarded fees when the independent counsel's investigation constituted a substantial duplication of the preliminary investigation of the DOJ, thus satisfying the "but for" requirement. See In re Olson, 884 F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1989) (per curiam) (IC's investigation "necessarily duplicated ground that had been covered by the preliminary investigation of the Department of Justice") (emphasis in original); In re Olson (Perry Fee Application), 892 F.2d 1073, 1074 (D.C.Cir., Spec. Div., 1990) (per curiam) (fee applicant "was being subjected to expenses for a duplicative investigation that he would not have been subjected to in the absence of the Ethics in Government Act"). Herman, relying on In re Olson, argues that her case falls into this category because the IC's investigation of this matter was duplicative of the DOJ's preliminary investigation. She claims that the preliminary investigation by the DOJ, as described in the AG's application for the appointment of an IC, and the investigation by the IC as described in his final report, confirm this duplication. She claims that further confirmation of this duplication can be seen in the similarities between the two areas of inquiry in the AG's recommended statement of jurisdiction and the two primary areas of the IC's investigation as set forth in the final report.
 
 
 15
 In his evaluation of Herman's fee petition, the IC disputes her claim that she satisfies the "but for" requirement. The IC argues that since pursuant to the Act the AG conducts a preliminary investigation to determine whether further investigation is warranted, then necessarily an independent counsel's investigation is going to address the same issues. Herman's reliance on In re Olson is misplaced, the IC claims, because in that case the independent counsel's investigation duplicated ground covered by the preliminary investigation, whereas in this case "the actual scope, depth, and conduct of the two investigations" show that the IC's investigation completed the preliminary investigation.
 
 
 16
 We note that the process of an independent counsel investigation set up by the Act will by its very nature necessarily replow some of the same ground already tilled by the DOJ. Section 592(a)(1) directs the Attorney General to conduct a preliminary investigation "in order to make a determination ... on whether further investigation is warranted, with respect to each potential violation, or allegation of a violation, of criminal law." 28 U.S.C. § 592(a)(1) (emphasis added). Consequently, the matters under investigation by an independent counsel are generally going to be the same as those investigated during the preliminary investigation. The question we need to answer is whether the investigation by the IC merely duplicates that of the DOJ. Duplication by definition does not occur if the IC's investigation extends significantly beyond that of the DOJ's preliminary investigation. See In re Olson, 884 F.2d at 1420 ("but for" requirement satisfied where "[t]he greater portion of [the IC's] investigation" duplicated that of the DOJ) (emphasis added). In In re Pierce (Kisner Fee Application), 178 F.3d 1356 (D.C.Cir., Spec. Div., 1999) (per curiam), we stated that the fee applicant could not satisfy the "but for" requirement by claiming that the Independent Counsel's investigation duplicated that of the DOJ because "the Independent Counsel's investigation ranged far beyond the preliminary investigation not only in depth but breadth. The matters investigated as to Kisner are far beyond anything in the preliminary investigation." Id. at 1360. We find similar circumstances here. Under the Act the AG was limited to 150 days within which to complete her preliminary investigation, and while conducting it she was not allowed, inter alia, to convene grand juries or grant immunity. 28 U.S.C. § 592(a). According to the IC, the DOJ in conducting the preliminary investigation gathered 9500 pages of documents from 15 persons and conducted 100 interviews of 89 persons. In contrast, the IC conducted his investigation of the allegations surrounding Herman over a period of almost two years, during which time he obtained over 250,000 pages of documents, interviewed 168 witnesses in a series of 203 interviews, questioned 57 persons before the grand jury of whom 43 had not been questioned as part of the preliminary investigation, and granted immunity to 12 persons. Additionally, the IC obtained an indictment of Abdul Rahman on multiple counts of making illegal campaign contributions through Vanessa Weaver, in violation of U.S. election laws. Therefore, the IC's investigation cannot in any relevant sense be considered duplicative of the DOJ's preliminary investigation.
 
 
 17
 The Act hampered the AG's preliminary investigation. Herman further argues that she satisfies the "but for" element because the statutory requirements of the Act hampered the preliminary invesconducted by the AG, and if the AG had not been so hampered then Herman would have been subjected to either a much more limited investigation or perhaps no investigation. See In re Sealed Case, 890 F.2d at 453; In re Donovan, 877 F.2d 982, 987 (D.C.Cir., Spec. Div., 1989) (per curiam). Specifically, Herman contends that "the credibility of Mr. Yene was central to the Attorney General's decision to seek an appointment of an independent counsel," and that the Act's restrictions prevented the AG from resolving Yene's credibility. She quotes from the AG's Application that during the preliminary investigation the AG was "unable to conclude that [Yene] is not credible. This, coupled with the strictures and limited investigative tools available under the Act, have led me to conclude that there are reasonable grounds to believe that further investigation is warranted." According to Herman, had the Act's restrictions not hampered the AG then the AG could have resolved Yene's credibility and "there most likely would never have been an independent counsel in this matter."
 
 
 18
 For authority, Herman cites to both Donovan and In re Sealed Case. She argues that in Donovan the Attorney General had noted in his application for appointment of an independent counsel that the limitations of the Act had hampered his ability to resolve the issue of the credibility of the one witness upon whom the case rested, and therefore an independent counsel would not have been appointed but for the requirements of the Act. See Donovan, 877 F.2d at 990. Herman claims that her case also revolved around the credibility of one witness, Yene, and that "had Attorney General Reno had the same tools available to her that Independent Counsel Lancaster had at his disposal, she would have been able to resolve this issue quickly with little if any expense to Secretary Herman." We disagree. As the IC points out, Donovan is not analogous to the situation here. In that case, we found the "but for" requirement satisfied because there was a single witness of dubious credibility who would not cooperate during the preliminary investigation. If the AG's office had been able to use normal prosecutorial means to assess the witness's credibility, then there would have been no need for the appointment of an independent counsel. Here, in contrast, Yene did cooperate during the preliminary investigation, and the allegations against Herman did not rise and fall simply on his credibility: in requesting the appointment of an independent counsel, the AG in her Application cited to "inconsistent and evolving explanations by other critical witnesses." We therefore agree with the IC "that if the Attorney General had had all of the standard prosecutorial tools available to her, the scope, depth and thoroughness of her investigation would have been similar, if not identical, to that of the Independent Counsel."
 
 
 19
 Herman likewise argues that in In re Sealed Case the Attorney General made a representation, similar to that made in Donovan, that he was unable to use compulsory process during the preliminary investigation, and that the subsequent independent counsel inquiry of a government official's tax returns for a period of nine years was far more probing than an ordinary taxpayer would have undergone. Consequently, the "but for" requirement was satisfied. See In re Sealed Case, 890 F.2d at 453-54. Similarly, Herman asserts that her own tax returns, financial records, and personal finances were subjected to intense scrutiny and that therefore she was "subjected to a more probing and thorough investigation than that to which a normal citizen would have been subjected." We do not find this assertion persuasive. As the IC points out, any prosecutor investigating allegations of illegal payments as in this case "would be remiss if he did not obtain and analyze the subject's financial and tax records as those records form the best evidence as to existence of illegal payments."
 
 
 20
 * * * * * * * * * *
 
 
 21
 In sum, we agree with both the Department of Justice and the Independent Counsel that the principal allegations surrounding this matter, i.e., a senior White House official receiving payments for using her influence to further the interests of business clients of a friend and her participation in a conduit scheme to solicit campaign contributions from a foreign national, would have been thoroughly investigated by the DOJ in the absence of the Act. Herman has not satisfied the "but for" requirement under either of the theories that she relies upon because she "was not subjected to an investigation that [she] would not have been subjected to in the absence of the Act." In re Nofziger, 925 F.2d 428, 446 (D.C.Cir., Spec. Div., 1991) (per curiam).
 
 
 22
 But although Herman was not investigated by the IC differently than she would have been otherwise, in the absence of the Act she would not have incurred fees for review and response to the IC's final report. Section 594 of the Act requires that the independent counsel "file a final report with the division of the court, setting forth fully and completely a description of the work of the independent counsel...." 28 U.S.C. § 594(h)(1)(B). Absent the Act, federal "prosecutors do not issue reports." In re North, 16 F.3d 1234, 1238 (D.C.Cir., Spec. Div., 1994) (per curiam). Indeed, as we have observed before, "[t]he filing of reports by Independent Counsels is `a complete departure from the authority of a United States Attorney' and is `contrary to the practice in federal grand jury investigations.'" Id. (quoting In re Sealed Motion, 880 F.2d 1367, 1369-70 (D.C.Cir., Spec. Div., 1989) (per curiam)). Therefore, we hold that the amount of $12,625.75 in attorneys' fees that Herman incurred for reviewing and responding to the IC's final report is reimbursable.
 
 CONCLUSION
 
 23
 For the reasons set forth above, we allow in part the petition of Alexis M. Herman to the extent of ordering reimbursement for attorneys' fees in the amount of $12,625.75. We deny the balance of the petition as not meeting the "but for" requirement of the Act, 28 U.S.C. § 593(f)(1).
 
 
 
 Notes:
 
 
 *
 Separate opinion concurring in the judgment filed by Senior Circuit Judge CUDAHY
 
 
 
 24
 CUDAHY, Circuit Judge, concurring in the judgment:
 
 
 25
 I fully concur in the allowance of fees incurred to respond to the Independent Counsel's final report — an expense which clearly would not have been incurred absent the unique requirements of the Ethics in Government Act calling for submission of a final report.
 
 
 26
 As to the denial by the majority of the remainder of Secretary Herman's fee claims, although these might be debatable as a matter of first impression, they seem foreclosed by the recent precedents — though not necessarily by older, and established, authority — of this court. As the majority indicates, Secretary Herman makes two arguments: first, that the independent counsel's investigation here is largely duplicative of the preliminary investigation by the Department of Justice; and second, that the Act has imposed limitations of prosecutorial means on the Attorney General's preliminary investigation, which otherwise might have narrowed or obviated the independent counsel's inquiry.
 
 
 27
 With respect to the first argument — that the independent counsel's investigation is largely duplicative of the Attorney General's preliminary investigation — Herman relies on In re Olson, 884 F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1989) (per curiam). Independent Counsel Lancaster, in his evaluation of Herman's fee request, argues that the present case can be distinguished from In re Olson on the ground that here the "scope and depth" of the preliminary investigation were different from Lancaster's investigation, and that the "conduct" of the two investigations was different. The majority accepts this argument in denying Secretary Herman her fees.
 
 
 28
 The reality is that preliminary investigations examine the same issues as investigations by the independent counsel, and there is necessarily a distinct similarity between the two procedures. The analytical distinction that must somehow be attempted, however, is between (a) the preliminary investigation, which is conducted for the limited purpose of determining whether a further inquiry is needed, and (b) the subsequent independent counsel investigation, which is the further inquiry itself. In recent years, our cases have increasingly emphasized the differences between the two procedures rather than the similarities.
 
 
 29
 In re Olson was the first case to recognize and invoke the duplication theory to award attorneys' fees,[1] though we have seldom invoked it since then.[2] That case contained only a brief discussion of duplication as a basis for attorneys' fees, but that discussion (favoring the payment of fees) was premised on a snippet of legislative history that accompanied the passage of § 593(f). Id. at 1420 (noting that "duplication" by the independent counsel of actions taken by the Attorney General during the preliminary investigation "is given as one instance where `[r]eimbursement may be warranted'" (quoting S.Rep. No. 97-496 (1982), reprinted in 1982 U.S.C.C.A.N. 3537, 3555) (alterations in original)). In re Olson argues against the result today by failing to include an explicit comparison of the "scope and breadth" of the preliminary investigation with the "scope and breadth" of the subsequent independent counsel investigation authorized by it. But, after granting an award of attorneys' fees, In re Olson goes on to quote further a somewhat contrary passage from the legislative history that "admonished [the court] to award reimbursement for attorneys' fees `in only rare circumstances' for `extraordinary expenses.'" 884 F.2d at 1420 (quoting S.Rep. No. 97-496).
 
 
 30
 In reality, there is duplication in almost every case, although in most it is less than total. As a result, In re Olson is not an easy case to distinguish. But rather than address this tension, our subsequent cases have invoked the somewhat contradictory admonishments of a Senate committee report to consistently reject "duplication" arguments as a basis for recovery.[3] See, e.g., In re Babbitt, 290 F.3d 386, 393-94 (D.C.Cir., Spec. Div., 2002) (rejecting duplication argument and stating that "[d]uplication by definition does not occur if the IC's investigation extends significantly beyond that of the DOJ's preliminary investigation" (citing In re Olson, 884 F.2d at 1420)); In re Pierce (Sanders Fee Application), 198 F.3d 899, 904 (D.C.Cir., Spec. Div., 1999) (rejecting fee application because the petitioner failed to "put forward evidence that the IC's investigation duplicated the preliminary investigation conducted by the Attorney General"); In re Pierce (Olivas Fee Application), 178 F.3d 1350, 1354 (D.C.Cir., Spec. Div., 1999) (stating that there can be no "serious argument" that duplication occurred because "the Independent Counsel's investigation ranged far beyond the preliminary investigation not only in depth but breadth"); In re Pierce (Kisner Fee Application), 178 F.3d 1356, 1360 (D.C.Cir., Spec. Div., 1999) (same); In re Nofziger, 938 F.2d 1397, 1404 (D.C.Cir., Spec. Div., 1991) (holding that only those fees resulting from a "substantial duplication of prior investigations" are reimbursable under § 593(f) and distinguishing In re Olson). Whether this blanket approach, which leaves In re Olson in almost solitary preeminence, would be validated if a rigorous, case-by-case analysis were employed is questionable.
 
 
 31
 On the second point, that the Act hampered the Attorney General's preliminary investigation, and therefore created the conditions for a more onerous independent counsel inquiry than would otherwise have been required, see In re Donovan, 877 F.2d 982, 987 (D.C.Cir., Spec. Div., 1989) (per curiam), there is also room for doubt. Both Independent Counsel Lancaster in his evaluation and the majority attempt to distinguish Donovan on the theory that the Attorney General in that case purportedly lacked the prosecutorial means to resolve an issue of credibility of a single witness, and this was the point on which the whole case turned. But it is not clear to me why in principle the denial of important prosecutorial methods should be a "but for" cause of an independent counsel's investigations if the prosecutorial challenge is simple (as was purportedly the case in Donovan) but not if the case is complicated by the testimony of "other critical witnesses," as the majority says is the case here. In any event, when the majority agrees with the Independent Counsel "that if the Attorney General had had all of the standard prosecutorial tools available to her, the scope, depth and thoroughness of her investigation would have been similar, if not identical, to that of the Independent Counsel, ..." it may be unwittingly making an entirely different point than it seems to be contemplating. For the point being made by the Independent Counsel's evaluation is that, if the Attorney General had all the "standard prosecutorial tools," the preliminary investigation would become as onerous as the resulting independent counsel investigation and would be fully as expensive, although by statute non-reimbursable.
 
 
 32
 In any event, the allegations against Secretary Herman suggested a sort of generic wrongdoing that is quite distinguishable from the charges, for example, against Secretary Babbitt, in whose case I dissented from the denial of the bulk of the fees. See In re Babbitt, 290 F.3d 386, 395 (D.C.Cir., Spec.Div., 2002) (Cudahy, J., concurring/dissenting). In Babbitt, the investigation proceeded only because the Attorney General could not abort it unless she found lack of criminal intent by clear and convincing evidence. See 28 U.S.C. § 592(a)(2)(b)(ii). In addition, despite the extensive marshaling of investigative resources, Babbitt failed to result in a single criminal indictment.
 
 
 33
 In contrast, the Herman investigation was much narrower in scope, yet it eventually resulted in the indictment of Abdul Rahman, a foreign national, based on preliminary evidence that Rahman transferred a large sum of money to Vanessa Weaver, a friend of Secretary Herman, at the same time that Weaver made donations totaling the same amount to various political organizations. These allegations are suggestive of the type of generic corruption that would likely have been taken quite seriously by the Department of Justice. The Department's evaluation of Secretary Herman's fee petition takes this position:
 
 
 34
 Ms. Herman cannot plausibly argue that absent the Independent Counsel law the matter of Rahman's campaign contributions — a matter involving allegedly unlawful political donations by a foreign national with ties to a high-level member of the White House staff — would not have been investigated. Nor can Ms. Herman plausibly argue that Ms. Weaver's involvement in the matter would not have been looked into, given the allegation, ultimately reflected in the explicit terms of the grand jury's indictment, that Ms. Weaver and/or her companies served as the conduit for the illegal funds. From an objective standpoint, it seems clear that this matter, including the question of Ms. Weaver's involvement, would have been investigated even absent an Independent Counsel statute.
 
 
 35
 DOJ Evaluation, at 9; cf. In re Pierce (Pierce Fee Application), 213 F.3d 713, 718 (D.C.Cir., Spec.Div., 2000) ("The convoluted nature of the corruption involved and the high profile identity of the suspects and defendants would no doubt have resulted in a complex and lengthy investigation with or without an independent counsel." (quotations omitted)).
 
 
 36
 Because Olson and Donovan are among the handful of cases that have resulted in an award of attorney's fees, they are relied upon in virtually every fee petition that comes before this court. As noted in my Babbitt dissent, our approach to § 593(f) attorneys' fee requests has become quite rigid in recent years. See 290 F.3d at 396 & n. 4 (discussing an "undeniable drift in our jurisprudence"). However, based on the nature of the allegations in the Herman investigation and the DOJ preliminary findings, there is really no need to distinguish Olson and Donovan, and we should curtail what has become a tiresome and legalistic exercise in favor of a judgment whether the allegations are of a generic or common sort, really inviting investigation in normal course by existing prosecutors.
 
 
 
 Notes:
 
 
 [1]
 The court inIn re Olson analyzed the issue of attorneys' fees in four distinct stages of the litigation, including a constitutional challenge to the Ethics in Government Act, which the Supreme Court rejected in Morrison v. Olson, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). The duplication theory was relied upon to satisfy the "but for" test only for the first phase of the litigation. See 884 F.2d at 1420.
 
 
 [2]
 Apparently, the last case to successfully invoke this exception wasIn re Olson (Perry Fee Application), 892 F.2d 1073 (D.C.Cir., Spec. Div., 1990), which held that the "but for" requirement had been satisfied because "[t]he investigation by the Public Integrity Section of the Department of Justice, and its decision not to recommend prosecution, provides ample support for the conclusion that, in the investigation conducted by the Independent Counsel, Perry was being subjected to expenses for a duplicative investigation that he would not have been subjected to in the absence of the Ethics in Government Act. Id. at 1074 (citing In re Olson, 884 F.2d at 1420). However, the matters investigated in In re Olson predated the 1987 amendment to the Act that constricted the ability of the Attorney General to not recommend an independent counsel investigation. See Independent Counsel Reauthorization Act of 1987, Pub.L. 100-191, § 2, 101 Stat. 1293, 1295 (1987) (amending 28 U.S.C. § 592(a) to limit the state of mind evidence as a basis for non-referral "unless there is clear and convincing evidence that the person lacked such state of mind"). In theory, this change in the law should have resulted in more, rather than less, duplication of investigation by the independent counsel.
 
 
 [3]
 For a discussion of the conflicting themes that have been drawn from the Act's legislative history and, in turn, relied upon by this court, seeIn re Babbitt, 290 F.3d 386, 395-96 & nn.1-2 (D.C.Cir., Spec. Div., 2002) (Cudahy, J., dissenting) (collecting and comparing cases that have cited S.Rep. No. 97-496 to either approve or deny attorneys' fees).